**EXHIBIT 1**

Electronically Filed by Superior Court of California, County of Orange, 08/28/2023 11:32:01 PM.
30-2023-01344722-CU-WT-NJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By A. Van Arker, Deputy Clerk.

Michelle L. Reynolds, Esq., SBN 288234
**THE Legal Advocate**
2110 K Street, 124
Sacramento, CA 95816
Phone: (714) 474-8097
Fax: (714) 845-9963
Email: AttorneyMichelleReynolds@gmail.com

Attorney for Plaintiff CARA SCHLICKMAN

### SUPERIOR COURT OF THE STATE OF CALIFORNIA
### COUNTY OF ORANGE COUNTY

| | |
|---|---|
| CARA SCHLICKMAN,<br><br>             Plaintiff,<br><br>vs.<br><br>ANSER ADVISORY, formerly known as DHS CONSULTING, LLC; and DOES 1-50.<br><br>             Defendants. | **Case No.:** _ 30-2023-01344722-CU-WT-NJC<br>Assigned for all purposes to Judge _ Judge Craig Griffin<br>**COMPLAINT FOR:**<br><br>1. DISABILITY DISCRIMINATION [Gov. Code § 12940(a)]<br>2. SEX/GENDER DISCRIMINATION/ PREGNANCY, CHILDBIRTH, AND/OR RELATED MEDICAL CONDITIONS DISCRIMINATION [Cal. Gov. Code §12940(a)]<br>3. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY<br>4. DECLARATORY RELIEF [Cal. Gov. Code §12920]<br>5. WAITING TIME PENALTIES [Lab. Code § 203 for violation of Lab. Code § 201]<br>6. UNFAIR COMPETITION [Bus. & Prof. Code § 17200 et. seq.] |

### [DEMAND FOR A JURY TRIAL]

Plaintiff CARA SCHLICKMAN (SCHLICKMAN or Plaintiff), alleges and complains based upon her own knowledge and acts—unless specifically stated based on information and belief—the following against ANSER ADVISORY, formerly known as DHS CONSULTING, herein referred to as ANSER ADVISORY; and DOES 1-50, all of whom are hereinafter collectively referred to as Defendants:

///

**INTRODUCTION**

1.   This action arises out of Defendants' numerous violations, including California's Government Code Fair Employment and Housing Act (FEHA), Labor Code, and Business and Professions Code.

**JURISDICTION & VENUE**

2.   Pursuant to California Code of Civil Procedure (CCP) § 395(a), the superior court in the county where the Defendants or some of them reside at the commencement of the action is the proper court for the trial of the action.

3.   At the commencement of and at all relevant dates relating to this action, defendants, including ANSER ADVISORY conducted/s business in and from the city of Santa Ana located in Orange County, California. On information and belief, so too do DOES 1-50.

4.   There is no federal question at issue as the claims herein are based solely on California law.

5.   Also, there is no diversity of citizenship amongst the Parties because at least one defendant is incorporated in or resides within California according to California's Secretary of State.

6.   Thus, jurisdiction and venue are proper in the Superior Court of California, County of Orange.

**PARTIES**

7.   *Plaintiff,* SCHLICKMAN, was hired February 5, 2019, as an Administrative Manager for DHS Consulting, Inc., California Corporation, directly reporting to its President, Sudhir Damle at 1820 E. 1st Street, Suite 410, Santa Ana, CA 92701. DHS Consulting, Inc. was converted on May 17, 2019 to DHS Consulting, LLC, a Limited Liability Company formed in California and owned by manager/member Sudhir Damle.

8.   *Defendant*, ANSER ADVISORY, acquired DHS Consulting, LLC on June 19, 2019. On information and belief, ANSER ADVISORY is a California business entity registered with California's Secretary of State.

9.   *Defendants*, DOES 1-50, are managing agents, co-conspirators, joint venturers, directors, officers and/or employees of ANSER ADVISORY, who acted within the course and scope of said agency, conspiracy, joint venture, and/or employment, with the actual or constructive knowledge and/or consent of ANSER ADVISORY.

**VICARIOUS LIABILITY**

10. SCHLICKMAN incorporates by reference all of the allegations set forth in the paragraphs above as though fully set forth herein.

11. Vicarious liability is a form of strict, secondary liability that arises under the common law

doctrine of agency, Respondeat Superior, i.e. the responsibility of the superior for the acts of his/her/their/its subordinate or, in a broader sense, the responsibility of any third party that had the "right, ability or duty to control" the activities of a violator.

12. ANSER ADVISORY is vicariously liable for DOE Defendant(s)' actions, as well as the actions of any of its other managing agents, co-conspirators, joint venturers, directors, officers and/or employees of ANSER ADVISORY, who acted within the course and scope of said agency, conspiracy, joint venture, and/or employment, with the actual or constructive knowledge and/or consent of ANSER ADVISORY. SCHLICKMAN is informed and believes that each Defendant authorized and/or ratified the wrongful activities of each of the remaining Defendants alleged within this Complaint. ANSER ADVISORY's conduct was undertaken by its director(s), officer(s), managing agent(s) and other persons responsible for supervision of employees and for the drafting and implementation of policies and other managerial decisions. The conduct of the officers, managing agents, and other individuals was on behalf of ANSER ADVISORY. Furthermore, ANSER ADVISORY had advance knowledge of such conduct of said individuals whose actions and conduct were authorized, approved, ratified, and/or actually or constructively known or performed by ANSER ADVISORY's director(s), officer(s), managing agent(s) and other persons responsible for supervision of employees and for the drafting and implementation of policies and other managerial decisions.

### FEHA ADMINISTRATIVE REMEDIES EXHAUSTED

13. SCHLICKMAN incorporates by reference all of the allegations set forth above as though fully set forth herein.

14. SCHLICKMAN timely filed a Complaint with California's Department of Fair Employment and Housing (DFEH) on February 8, 2022 against Answer Advisory f.k.a. DHS Consulting, which the DFEH, now known as the Civil Rights Department (CRD), closed and then mailed by first class mail a Right to Sue notice dated August 26, 2022, notifying SCHLICKMAN that "…[a]s specified in Government Code section 12965, subdivision (b), [she] may file [her] own civil action asserting employment claims under the FEHA within one year of the date of this letter. …".

15. Thus, SCHLICKMAN exhausted administrative remedies and has the right to pursue her FEHA claims against ANSER ADVISORY fka DHS Consulting for Discrimination that SCHLICKMAN experienced on or before February 5, 2021, because of her actual or perceived Disability (physical or mental); Sex/Gender; Pregnancy, childbirth, breast feeding and/or related medical conditions, and as a result of such SCHLICKMAN was subjected to termination.

**FACTUAL ALLEGATION COMMON TO PLAINTIFF'S INDIVIDUAL CLAIMS**

16. SCHLICKMAN incorporates by reference all of the allegations set forth above as though fully set forth herein.

17. On February 5, 2019, DHS Consulting, Inc. hired SCHLICKMAN as a full-time, non-exempt Administrative Manager paid $28.85 per hour [$1,154.00 per week], payable on a bi-weekly basis. SCHLICKMAN's first day of work was March 4, 2019. SCHLICKMAN directly reported to DHS Consulting, Inc.'s President, Sudhir Damle, at 1820 E. 1st Street, Suite 410, Santa Ana, CA 92701.

18. However, almost immediately after Mr. Damle became aware SCHLICKMAN's race and the fact that she was pregnant, DHS Consulting no longer allowed SCHLICKMAN to report directly to Mr. Damle. SCHLICKMAN believes this is the first instance of racial and gender discrimination she experienced working for DHS Consulting, LLC.

19. DHS Consulting, Inc. was converted on May 17, 2019 to DHS Consulting, LLC, a Limited Liability Company formed in California and owned by manager/member Sudhir Damle.

20. On June 19, 2019, ANSER ADVISORY, acquired DHS Consulting, LLC.

21. According to a DHS Consulting, Inc. Leave Of Absence Request Form, on October 4, 2019, SCHLICKMAN started approved Pregnancy Disability Leave that was protected under the Family Medical Leave Act (FMLA).

22. On December 27, 2019 at 2:57 pm, Karynna Ferreira, Anser Advisory's HR Business Partner emailed SCHLICKMAN to inform her of the following: "Family Medical Leave Act (FMLA) entitlement of 12 weeks will be exhausted as of January 3, 2020 and [her] Pregnancy Disability Leave entitlement of four months will be exhausted as of January 31, 2020.  As such, [Anser Advisory] would expect [SCHLICKMAN] to return to work on Monday, February 3, 2020.  However, [Anser Advisory]…received [her] request for one additional week of unpaid leave and [her] physicians statement (dated 12/10/2019). The company recognizes that situations may arise where an employee, who is not eligible for leave under FMLA, will be unable to perform duties due to medical conditions. Therefore, your request for one additional week of non FMLA leave has been approved.  Please note that this is an unpaid leave of absence and you continue to be responsible for remitting any and all benefit premiums during your leave. We expect that you will return to work on Monday, February 10, 2020.  We look forward to your return!"

23. At 3:15 pm on December 27, 2019, SCHLICKMAN responded to Ms. Ferreira as follows: "Per our phone conversation I wanted to outline what leave and disability has been utilized so far. I utilized

two weeks of PDL-pre delivery and six weeks of PDL post delivery. My GP MD has extended my PDL/ Disability due to nerve damage sustained during labor until February 10, 2020. I have yet to use any of the unpaid twelve weeks of FMLA and or any of my six weeks of PFL (paid family leave). I am awaiting scheduling for an appointment per my MD to neurology which should be after the New Year. Please let me know if there is anything else you need from me in regards to this. Thanks so much for your help" and added at 4:21 pm "I forgot to add on my previous email that my PFL- paid family leave is usable up to one year after her birth."

24. On December 31, 2019 at 12:20 pm, Ms. Ferreira sent SCHLICKMAN a responsive email, writing, "Leaves of absence can be very confusing!  But if I may, I would like to share with you that FMLA and PDL run concurrently and will expire as of the dates specified in the email below.  Paid Family Leave (PFL) is a benefit for compensation through the state of California and does not provide any job related protection. You do, however, have 12 weeks of California Family Rights Act (CFRA) that you are entitled to use at any time before the baby's first birthday, but after you've been medically released from disability." At 12:54 pm, SCHLICKMAN emailed Ms. Ferreira as follows: "If I may, I have spoken to EDD and the information I have been given is that PDL/disability and FMLA are different and do not run concurrently. I was also informed of this by Loyella prior to her departure. I was also informed by EDD that my disability was approved to be extended until 2.10.20 and that I would not be penalized as such, along with my return to work as long as I was cleared medically to do so. As previously stated I am awaiting appointments with neurology for damage sustained prior to returning to work. They will be working closely with my MD on this. I'd also like to be clear that my using my PFL would jeopardize my employment? This wasn't mentioned at any point in numerous conversations with Loyella. If you could/would clarify what CFRA is and how that works I would appreciate it. I appreciate your assistance with this matter as it is confusing and it is becoming clear that procedures weren't properly articulated prior to my delivery." At 1:04 pm, Ms. Ferreira recommended a conference call between them on January 6, 2020 "[i]n efforts to try and get some clarity on this topic…".

25. On February 3, 2020, SCHLICKMAN's neurologist extended her disability leave by 6 months, and provided this documentation to ANSER ADVISORY's Human Resources.

26. Given SCHLICKMAN's leave of absence, in February 2020, her employer required she apply to an assisting recruiting position which she was qualified to do because SCHLICKMAN had worked in recruiting prior to maternity leave. SCHLICKMAN informed her employer of her intent to return to work, including notifying her employer of the end date of her disability leave, which at that point was

June 2020. SCHLICKMAN was allegedly passed over for "someone with just a little more experience" than she had according to **Marlene Humber**, Senior Vice President of Human Resources at Anser Advisory.

27. In September 2020, SCHLICKMAN notified ANSER ADVISORY of her need for disability accommodation, specifically work restrictions prescribed by her physician. ANSER ADVISORY failed to respond in any manner, including failed to enter into the interactive process with SCHLICKMAN from September, October, and November 2020. SCHLICKMAN simply did not hear back from ANSER ADVISORY's HR regarding accommodating SCHLICKMAN's work restrictions ANSER ADVISORY requested of SCHLICKMAN in September 2020.

28. Because SCHLICKMAN had not received a response from anyone else in HR, on or about December 3, 2020, SCHLICKMAN called Ms. Humbert to inquire about returning to work to her position and a date to do so. Ms. Humbert informed SCHLICKMAN that with the consolidation of both companies (DHS Consulting and ANSER ADVISORY) into one that the administrative side of the company was allegedly completely covered and the position SCHLICKMAN previously held was "dissolved". Ms. Humbert then stated "they'd love to have [SCHLICKMAN] return to work a position [ANSER ADVISORY] would have to locate for her. SCHLICKMAN informed Ms. Humbert that she was unaware of the consolidation and when her position had been eliminated. Ms. Humbert then informed SCHLICKMAN that with the end of the year approaching and certain deadlines that needed to be met, Ms. Humbert could give this issue her undivided attention later and that if SCHLICKMAN could give Ms. Humbert until the top of the year when they would regroup and go over options. SCHLICKMAN informed Ms. Humbert that she understood and would speak with Ms. Humbert after the New Year.

29. On January 14, 2021, Ms. Humbert and SCHLICKMAN spoke. Their conversation involved ANSER ADVISORY's wrongful termination of SCHLICKMAN, offering SCHLICKMAN a severance of 1 week in exchange for a general and specific release of any and all claims, and SCHLICKMAN requesting an employment verification letter SCHLICKMAN needed to provide realtor Darvin Thompson. Later that day, at 5:37 PST, Ms. Humbert emailed SCHLICKMAN an employment verification letter stating the following in relevant part: "This letter serves to verify employment for Cara Schlickman. Cara has been employed with Anser Advisory since March 04, 2019 as an Administrative Manager. Her annual salary is $60,008.00 and she is an employee in good standing." Yet SCHLICKMAN had not actually worked and been paid by ANSER ADVISOR for a day's work since

her pregnancy disability leave starting October 14, 2019.

30.  Instead of accommodating and reinstating SCHLICKMAN, instead, on January 20, 2021 at 6:05 pm PST, Ms. Humbert sent SCHLICKMAN the following email: "Hello Cara – I hope all is well with you and your family.  Just wanted to verify that you received the employment verification letter that I sent to you?  Also, I have the severance agreement that we discussed ready to send to you.  I wanted to make sure you received the first letter before I sent the agreement over."

31. On January 21, 2021 at 11:57 am, Ms. Humbert actually emailed SCHLICKMAN the aforementioned severance agreement.

32. On February 1, 2021 at 1:15 pm, Ms. Humbert sent SCHLICKMAN a follow up email stating, "Hello Cara – I wanted to touch base with you to see if you had any questions on the severance agreement.  If you still want to move forward with the termination on February 5th, please contact me at your earliest convenience so that we can coordinate.  Thank you". But SCHLICKMAN did not want to be terminated. SCHLICKMAN could have lawfully quit if she desired to separate from employment with ANSER ADVISORY. Emotionally distressed over being terminated after not being accommodated and enduring an unnecessary delay creating false hope within SCHLICKMAN from December 2020 to mid-January 2021, SCHLICKMAN had yet to respond to Ms. Humbert.

33. Thus, on February 3, 2021 at 10:57 am PST, Ms. Humbert sent SCHLICKMAN an email stating, "Hello Cara – I have been trying to reach your [sic] regarding your employment status with Anser Advisory.  In addition to these 2 emails, I left you a voice mail message on both Monday, February 1st, 2021 and Tuesday, February 2nd, 2021.  Please give me a call at the number listed below or reply to your email.  Thank you."

34. On February 4, 2021, Ms. Humbert emailed SCHLICKMAN as follows: "Cara – my understanding is that you were in the process of moving residences.  I need to verify your current home address so that we can ship your separation payment to you, as we previously discussed."

35. On February 23, 2021, a male working for ANSER ADVISORY named Antonio called SCHLICKMAN and left her a voice message.

36. On March 26, 2021 at 11:26 am, SCHLICKMAN, who had been suffering emotionally and financial since ANSER ADVISORY failed to accommodate her and then terminated her, emailed Ms. Humbert, acknowledging and questioning Antonio's email, stating "Good afternoon Marleen, I received a phone call from Antonio from Anser Advisory on February 23, 2021. I apologize for the delay in checking my messages; I do not answer numbers I don't recognize.  I am unaware as to what this phone

call regards. If you can, I'd appreciate you providing me with clarification. Please refer to the attached screen shot of the voicemail as well as the actual voicemail attachment."

37. In response, on March 26, 2021 at 11:35 am, Ms. Humbert emailed SCHLICKMAN, writing "Hello Cara – I hope all is well with you and your family!  Thank you for reaching out to me regarding this.  Antonio is our Payroll Manager and he was reaching out to you to make sure we had your current home address.  You had mentioned that you were in the process of getting a new home, and as we were processing the separation payment for you we wanted to make sure it did not get lost in the mail.  Can you please confirm that you did receive that check as we had discussed? Also, we assumed that you were not interested in receiving the additional severance payment because you did not return the signed agreement, however, if that is not correct, please let me know.  The additional severance payment you would be eligible for is another $2500.00.  Thank you!"

38. Despite Ms. Humbert's written words, ANSER ADVISORY mailed a check for $2,500.08 gross that deceptively looked like a regular paycheck, and could easily make a payee believe the check is a payroll check instead of a severance payment because nowhere on the ADP "earning statement" or the $1,733.02 net check does it reflect a severance payment. On information and belief, SCHLICKMAN asserts ANSER ADVISORY maliciously, oppressively, or fraudulently attempted to dupe her into depositing this check and thus forego her lawful rights against ANSER ADVISORY via part performance.

39. Believing the check was a payroll check but confused by such, on April 14, 2021, SCHLICKMAN responded to Ms. Humbert as follows: "Hello Marlene, I did receive the check in the mail. I was wondering if you could clarify what the check is for as I didn't work for DHS and or Anser during the month of February. Thank you for this clarification."

40. On April 15, 2021 at 10:22 am, Ms. Humbert responded via an email, stating "Certainly Cara – that information was outlined in the agreement that was sent to you on January 21, 2021.  Please verify that you received the agreement that was sent to you."

41. On April 15, 2021 at 10:28 am, SCHLICKMAN sought additional clarification from Ms. Humbert via email, writing "Marlene, I appreciate your response are you referencing the FedEx package that was sent to me? I was under impression that this was only in relation the severance agreement. If you be so kind to explain what the separately mailed is in reference to I would greatly appreciate it."

42. On April 15, 2021 at 10:41 am, Ms. Humbert responded as follows: "Hello Cara – I thought it might be easier to just resend the original agreement that was sent to you on January 21, 2021 via

email. On page 1 of the agreement, you will see a reference to the Separation Payment which is the payment that was made to you earlier this year. Please let me know if you have any additional questions. Happy to help!"

43. SCHLICKMAN, still in need of clarification, emailed Ms. Humbert on April 15, 2021 at 3:10 pm, stating "Hello Marlene, I did receive and l had the opportunity to read the packet. Could you please do me a favor and send over a copy of the separation pay policy?"

44. On April 15, 2021 at 3:50 pm, Ms. Humbert wrote SCHLICKMAN, stating "Hello Cara, I'm not sure what you're asking for. We've provided the severance agreement which relates to the separation pay."

45. On April 22, 2021 at 1:06 pm, SCHLICKMAN, feeling nearly tricked, emailed Ms. Humbert and unequivocally reminded ANSER ADVISORY and Ms. Humbert that she does not accept the severance agreement as follows: "Good Afternoon Marlene, I'm writing to inform you I will not be cashing the separation check payment as I have not agreed to, nor have I signed the severance agreement. If you have any further questions in regard to this matter please feel free to contact me."

46. It is clear that SCHLICKMAN was able to return to work for ANSER ADVIORY in September 2020. However, ANSER ADVISORY did not pay SCHLICKMAN her final check until February 2021 or shortly thereafter. Therefore, ANSER ADVISORY's payment of SCHLICKMAN's final wages are untimely.

## FIRST CAUSE OF ACTION

### DISABILITY DISCRIMINATION

### [Gov. Code § 12940(a)]

### (Against ANSER ADVISORY and DOES 1-50)

1. SCHLICKMAN repeats and re-alleges the allegations set forth above, and incorporates same by reference as though fully set forth herein.

2. ANSER ADVISORY is an "employer" within the meaning of and is subject to FEHA as an employer of five (5) or more employees. Cal. Gov. Code § 12926(d).

3. At all relevant times herein, SCHLICKMAN was an individual employed by ANSER ADVISORY or DHS Consulting which ANSER ADVISORY acquired.

4. Government Code section 12940(a) provides that it is an unlawful employment practice "[f]or an employer, because of the . . . physical disability . . . of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to

discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

5. The California Fair Employment and Housing Act ("FEHA") defines "disability" to include (1) "[h]aving a record or history of a disease, disorder, condition, cosmetic disfigurement, anatomical loss, or health impairment [that constitutes a physical disability], which is known to the employer"; (2) "[b]eing regarded or treated by the employer … as having, or having had, any physical condition that makes achievement of a major life activity difficult"; or (3) "[b]eing regarded or treated by the employer … as having, or having had, a disease, disorder, condition, cosmetic disfigurement, anatomical loss, or health impairment that has no present disabling effect but may become a physical disability." Cal. Gov. Code § 12926, subd. (k)(3)–(5). Under "regarded as" theory, an actual or existing disability is not necessary. *Gelfo v. Lockheed Martin Corp.*, 140 Cal. App. 4th 34, 52-53 (2006). SCHLICKMAN alleges that she was discriminated against on the basis of her actual disability, as well as on the basis of having been regarded as disabled.

6. During her employment with ANSER ADVISORY, SCHLICKMAN suffered from an actual pregnancy-related physical disability which limited the major life activity of working, among other things. ANSER ADVISORY knew that SCHLICKMAN suffered from the disability because SCHLICKMAN informed ANSER ADVISORY Human Resources about it and provided relevant doctor's notes for time off for her disability.

7. Alternatively, SCHLICKMAN believes she was being "regarded" by ANSER ADVISORY as having or having had a physical disability. Cal. Gov. Code §12926(k)(5). ANSER ADVISORY regarded SCHLICKMAN as having a physical disability.

8. SCHLICKMAN was at all relevant times qualified for her position and able to perform the essential functions of her job with reasonable accommodation for her disability. Yet during her employment, SCHLICKMAN was treated less favorably than similarly situated non-disabled employees because of her disability and/or perceived disability.

9. ANSER ADVISORY discriminated against SCHLICKMAN on the basis of her disability or perceived disability by taking adverse employment actions against SCHLICKMAN including but not limited to failing to accommodate her work restrictions from September 2020 to ultimately terminating her employment. SCHLICKMAN's actual or perceived disability was a substantial motivating reason for all adverse employment actions taken against SCHLICKMAN.

10. The above-stated acts and omissions of ANSER ADVISORY, as alleged throughout this

Complaint, constituted disability discrimination in violation of public policy and in violation of California Government Code §§ 12940, et seq.

11. As a direct, foreseeable, and proximate result of ANSER ADVISORY' conduct, as alleged above, SCHLICKMAN has suffered lost income, employment, and career opportunities, and has suffered and continues to suffer other economic loss, the precise amount of which will be proven at trial, but not less than $60,008 annually, the amount she would have earned working for ANSER ADVISORY had ANSER ADVISORY not wrongfully terminated her.

12. As further direct and legal result of the acts and conduct of ANSER ADVISORY, as aforesaid, SCHLICKMAN has been caused to and did suffer and continues to suffer pain, anxiety, depression, embarrassment, anger, loss of enjoyment of life, fright, nervousness, grief, worry, shock, humiliation, mortification, indignity, apprehension, ordeal, inconvenience, and emotional and mental distress, the precise amount of which will be proven at trial, but in an amount not less than her annual rate.

13. ANSER ADVISORY's conduct was a substantial factor in causing the aforementioned harm.

14. The above-recited actions of ANSER ADVISORY were done with malice, fraud, and/or oppression, and in conscious, despicable and reckless disregard of SCHLICKMAN's rights under FEHA. Additionally, such conduct was carried out against SCHLICKMAN in a willful manner and in conscious disregard of her civil rights. SCHLICKMAN is entitled to and seeks punitive damages against each Defendant, including but not limited ANSER ADVISORY, herein in an amount according to proof, but at a minimum of $600,080. The aforementioned conduct on which punitive damages is alleged, was done with the advance knowledge by an officer, director and/or managing agent of ANSER ADVISORY and Does 1 through 50's, inclusive. The alleged conduct on which punitive damages is alleged, was authorized, ratified and/or committed by an officer, director, and/or managing agent of ANSER ADVISORY and DOES 1 through 50's, inclusive.

15. Under the FEHA, SCHLICKMAN is also entitled to an award of reasonable attorney's fees and costs.

### SECOND CAUSES OF ACTION
### SEX/PREGNANCY DISCRIMINATION
#### [Violation of Government Code §12940(a)]
#### (Against ANSER ADVISORY and DOES 1-50)

16. SCHLICKMAN repeats and re-alleges the allegations set forth above, and incorporates

same by reference as though fully set forth herein.

17.    ANSER ADVISORY is an "employer" within the meaning of and is subject to FEHA as an employer of five (5) or more employees.  Cal. Gov. Code § 12926(d).

18.    At all relevant times herein, SCHLICKMAN was an individual employed by ANSER ADVISORY.

19.    At all relevant times mentioned herein, California Government Code §12940(a) was in full force and effect and binding on ANSER ADVISORY. Cal. Govt. Code §12940(a) prohibits an employer from taking an adverse employment action against a protected individual based on his or her sex. Adverse employment actions include, without limitation, discharging from employment, subjecting to disparate treatment, and discrimination, terms and conditions or privileges of employment. "Sex" includes, but is not limited to pregnancy, childbirth or related medical conditions. Cal. Govt. Code §12926.

20.    Government Code section 12940(a) provides that it is an unlawful employment practice "[f]or an employer, because of the . . . gender . . . of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

21.    At all relevant times herein, ANSER ADVISORY had a practice of failing to treat SCHLICKMAN in an equitable fashion and thereby wrongfully discriminated against SCHLICKMAN. As set forth fully hereinabove, SCHLICKMAN was discriminated against on the basis of her sex and pregnancy in the form of unfair terms, conditions, and privileges of employment.

22.    ANSER ADVISORY discriminated against SCHLICKMAN on the basis of her sex/pregnancy by taking adverse employment actions against SCHLICKMAN including but not limited to failing to accommodate her medical condition as result of pregnancy complications and ultimately terminating her employment. SCHLICKMAN's sex/pregnancy and gender was a substantial motivating factor for all adverse employment actions taken against SCHLICKMAN.

23.    SCHLICKMAN is informed and believes, and thereon alleges that her sex/pregnancy were a substantial factor contributing to ANSER ADVISORY's discriminatory treatment of her with respect to the terms, conditions, and privileges of employment, including but not limited to unfair treatment, adverse employment action, and wrongful termination as set forth herein.

24.    Because SCHLICKMAN's sex/pregnancy were a substantial factor contributing to the conduct of ANSER ADVISORY and their agents, the above-described acts of ANSER ADVISORY

constitute unlawful employment practices in violation of Government Code §12940(a).

25.     As a direct, foreseeable, and proximate result of ANSER ADVISORY' conduct, as alleged above, SCHLICKMAN has suffered lost income, employment, and career opportunities, and has suffered and continues to suffer other economic losses, the precise amount of which will be proven at trial.

26.     As further direct and legal result of the acts and conduct of ANSER ADVISORY, as aforesaid, SCHLICKMAN has been caused to and did suffer and continues to suffer pain, anxiety, depression, embarrassment, anger, loss of enjoyment of life, fright, nervousness, grief, worry, shock, humiliation, mortification, indignity, apprehension, ordeal, inconvenience, and emotional and mental distress, the precise amount of which will be proven at trial.

27.     ANSER ADVISORY' conduct was a substantial factor in causing the aforementioned harm.

28.     The above-recited actions of ANSER ADVISORY were done with malice, fraud, and/or oppression, and in conscious, despicable and reckless disregard of SCHLICKMAN's rights under FEHA. In addition, such conduct was carried out against SCHLICKMAN in a willful manner and in conscious disregard of her rights.   SCHLICKMAN is entitled to and seeks punitive damages against ANSER ADVISORY herein in an amount according to proof.   The aforementioned conduct on which punitive damages is alleged, was done with the advance knowledge by an officer, director and/or managing agent of ANSER ADVISORY.   The alleged conduct on which punitive damages is alleged, was authorized, ratified and/or committed by an officer, director, and/or managing agent of ANSER ADVISORY.

29.     Under FEHA, SCHLICKMAN is entitled to an award of reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### WRONGFUL TERMINATION IN VIOLATION
### [Violation of Public Policy]
### (Against ANSER ADVISORY and DOES 1-50)

30.     SCHLICKMAN repeats and re-alleges the allegations set forth above and incorporates same by reference as though fully set forth herein.

31.     At all relevant times herein, SCHLICKMAN was an individual employed by ANSER ADVISORY.

32.     ANSER ADVISORY terminated SCHLICKMAN on the basis of her actual or perceived disability, her sex/pregnancy, and/or because of her request for accommodation.

33. ANSER ADVISORY' termination of SCHLICKMAN's employment violates public policy of the State of California. Such public policy is set forth in Article I, §8, of the California Constitution and FEHA (Government Code §12900, *et seq.*), which specifically prohibits ANSER ADVISORY from discriminating, harassing, and retaliating against SCHLICKMAN on the basis of her disability, sex/pregnancy, and/or request for accommodation in the workplace.

34. ANSER ADVISORY violated such public policy by discriminating against, retaliating against, harassing, failing to accommodate, and terminating SCHLICKMAN's employment on the basis of her actual or perceived disability, sex/pregnancy, and/or her need for accommodation, acts which constituted a wrongful termination of SCHLICKMAN.

35. SCHLICKMAN's actual or perceived disability and/or her request for accommodation were substantial motivating reasons for SCHLICKMAN's termination.

36. As a direct, foreseeable, and proximate result of SCHLICKMAN's conduct, as alleged above, SCHLICKMAN has suffered lost income, employment, and career opportunities, and has suffered and continues to suffer other economic loss, the precise amount of which will be proven at trial.

37. As further direct and legal result of the acts and conduct of ANSER ADVISORY, as aforesaid, SCHLICKMAN has been caused to and did suffer and continues to suffer pain, anxiety, depression, embarrassment, anger, loss of enjoyment of life, fright, nervousness, grief, worry, shock, humiliation, mortification, indignity, apprehension, ordeal, inconvenience, and emotional and mental distress, the precise amount of which will be proven at trial.

38. ANSER ADVISORY' conduct was a substantial factor in causing the aforementioned harm.

39. The above-recited actions of ANSER ADVISORY were done with malice, fraud, and/or oppression, and in conscious, despicable and reckless disregard of SCHLICKMAN's rights under FEHA. In addition, such conduct was carried out against SCHLICKMAN in a willful manner and in conscious disregard of her rights. SCHLICKMAN is entitled to and seeks punitive damages against ANSER ADVISORY herein in an amount according to proof. The aforementioned conduct on which punitive damages is alleged, was done with the advance knowledge by an officer, director and/or managing agent of ANSER ADVISORY. The alleged conduct on which punitive damages is alleged, was authorized, ratified and/or committed by an officer, director, and/or managing agent of ANSER ADVISORY.

## FOURTH CAUSE OF ACTION

### DECLARATORY RELIEF

### (Against ANSER ADVISORY and DOES 1-50)

40.     SCHLICKMAN hereby incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

41.     Ca. Gov. Code §12920 sets forth the public policy of the State of California as follows: "It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgement on account of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age or sexual orientation.

It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment for these reasons foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advancement, and substantially and adversely affects the interests of employees, employer, and the public in general.

Further, the practice of discrimination because of race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, marital status, national origin, ancestry, familial status, source of income, disability, or genetic information in housing accommodations is declared to be against public policy.

It is the purpose of this part to provide effective remedies that will eliminate these discriminatory practices. This part shall be deemed an exercise of the police power of the state for the protection of the welfare, health and peace of the people of this state."

42.     Cal. Gov. Code §12920.5 embodies the intent of the California legislature and states, "[i]n order to eliminate discrimination, it is necessary to provide effective remedies that will both prevent and deter unlawful employment practices and redress the adverse effects of those practices on aggrieved persons. To that end, this part shall be deemed an exercise of the Legislature's authority pursuant to Section 1 of Article XIV of the California Constitution."

43.     Moreover, Cal. Gov. Code §12921, subdivision (a) says in pertinent part, "[t]he opportunity to seek, obtain, and hold employment without discrimination because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, or sexual orientation is hereby recognized as and declared to be a civil right."

44. An actual controversy has arisen and now exists between SCHLICKMAN and ANSER ADVISORY concerning their respective rights and duties as it is believed that ANSER ADVISORY may allege that SCHLICKMAN's termination was based on a non-discriminatory, legitimate reason and that SCHLICKMAN's disability and SCHLICKMAN's requests for accommodations were not a substantial motivating factor for the decision to terminate SCHLICKMAN or any factor whatsoever. SCHLICKMAN contends that the reason given by ANSER ADVISORY was a pretext to mask its true reason(s) for terminating SCHLICKMAN. SCHLICKMAN is informed and believes, and on that basis alleges, that ANSER ADVISORY shall dispute SCHLICKMAN's contention and shall assert its reason was nondiscriminatory and legitimate.

45. Pursuant to Cal. Gov. Code of Civ. Proc. §1060, SCHLICKMAN desires a judicial determination of SCHLICKMAN's rights and duties, and a declaration that her membership in protected classes and engagement in protected activity were substantial motivating factors in ANSER ADVISORY' decision to terminate SCHLICKMAN.

46. A judicial declaration is necessary and appropriate at this time under the circumstances in order that SCHLICKMAN, for SCHLICKMAN and on behalf of employees of the State of California and in conformity with the public policy of the State, obtain a judicial declaration of the wrongdoing of ANSER ADVISORY and to condemn such discriminatory employment policies or practices.

47. A judicial declaration is necessary and appropriate at this time such that ANSER ADVISORY may also be aware of its obligations under the law to not engage in discriminatory practices and violate the law.

48. Cal. Gov. Code §12965(b) provides that an aggrieved party, such as SCHLICKMAN herein, may be awarded reasonably attorney's fees and costs. Such fees and costs expended by an aggrieved party may be awarded for the purpose redressing, preventing or deterring discrimination.

**FIFTH CAUSES OF ACTION**

**WAITING TIME PENALTIES**

[Lab. Code § 203 for violation of Lab. Code § 201]

**(Against ANSER ADVISORY and DOES 1-50)**

49. SCHLICKMAN incorporates by reference, repeats, and realleges, all preceding and subsequent paragraphs as though fully set forth herein.

50. SCHLICKMAN is informed and believes, and thereon alleges, that ANSER ADVISORY: (1) set SCHLICKMAN's wages, hours, or working conditions; (2) hired or terminated employees similar

to SCHLICKMAN; (3) controlled SCHLICKMAN's work; (4) set or negotiated SCHLICKMAN's wages; (5) assigned or supervised SCHLICKMAN's work; (6) determined SCHLICKMAN's hours or conditions of employment; (7) set SCHLICKMAN's work schedules; and/or (8) supplied the instrumentalities, tools, or place of work for SCHLICKMAN.

51.    California Labor Code § 201 requires all California employers to remit payment to an employee of all earned, but unpaid compensation, on the date of termination. California Labor Code § 203 provides that an employee is entitled to a day's wages, up to thirty (30) days for every day an employer fails to pay all of SCHLICKMAN's wages upon termination. Though ANSER ADVISORY finally communicated to SCHLICKMAN that her final day working for ANSER ADVISORY would be February 5, 2021, ANSER ADVISORY should have accommodated SCHLICKMAN and reinstated her in September 2020. Having failed to do so, ANSER should have paid SCHLICKMAN her final paycheck in September of 2020. Thus, SCHLICKMAN's final paycheck was untimely and, as a result of such, SCHLICKMAN is owed waiting time penalties as ANER ADVISORY's conduct is clearly willful given it withheld payment from September 2020 to February 2020.

52.    SCHLICKMAN has incurred and continues to incur legal expenses and attorneys' fees. SCHLICKMAN will seek the recovery of those fees and costs at the conclusion of this lawsuit and all other remedies available under applicable laws.

## SIXTH CAUSE OF ACTION
### UNFAIR COMPETITION
### [Violation of Business & Professionals Code § 17200 *et seq*.]
### (Against ANSER ADVISORY and DOES 1-50)

53.    SCHLICKMAN incorporates by reference, repeats, and realleges, all preceding and subsequent paragraphs as though fully set forth herein.

54.    SCHLICKMAN alleges and incorporates by reference each of the foregoing paragraphs of this Demand as if fully alleged herein.

55.    California Business and Professions Code section 17200 ("UCL") defines unfair competition as an "unlawful" or "unfair" business act or practice.

56.    California Business & Professions Code Section 17203 provides that "[t]he court may make such orders or judgments ... as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means

of unfair competition."

57.    ANSER ADVISORY are each a "person" under UCL § 17021.

58.    ANSER ADVISORY have engaged in acts of unfair competition as defined in Bus. & Profs Code §§17200, et seq., by engaging in the acts and practices alleged herein.

59.    ANSER ADVISORY have engaged and continue to engage in business practices that are both unlawful and unfair and therefore violate the UCL. ANSER ADVISORY' conduct described above all constitute unlawful acts and practices prohibited by the Labor Code and UCL. These failures also independently constitute unfair acts and practices under the UCL. In addition to the above alleged failures and violations, the following violations of the Labor Code also constitute unlawful and unfair business practices prohibited by the UCL.

a)  ANSER ADVISORY' disability discrimination against SCHLICKMAN;

b)  ANSER ADVISORY' failure to accommodate SCHLICKMAN's disability;

c)  ANSER ADVISORY' failure to engage in the interactive process;

d)  ANSER ADVISORY' retaliation for requesting accommodation;

e)  ANSER ADVISORY' sex/pregnancy discrimination;

f)  ANSER ADVISORY' harassment of SCHLICKMAN on the basis of sex/pregnancy and disability;

g)  ANSER ADVISORY' failure to prevent discrimination, retaliation, and harassment;

h)  ANSER ADVISORY' wrongful termination of SCHLICKMAN;

i)  ANSER ADVISORY' failure to provide meal and rest breaks;

j)  ANSER ADVISORY' failure to pay SCHLICKMAN minimum wages;

k)  ANSER ADVISORY' failure to pay SCHLICKMAN overtime compensation;

l)  ANSER ADVISORY' failure to provide accurate wage statements;

m) ANSER ADVISORY' failure to maintain wage and hour records;

n)  ANSER ADVISORY' failure to pay wages at the time of termination; and

o)  ANSER ADVISORY' failure to pay or reimburse SCHLICKMAN's business expenses, such as the pro rata basis of her cellphone and business mileages reimbursement for the personal use of her vehicle.

60.    As a direct and proximate result of these unlawful and unfair practices, SCHLICKMAN suffered injury in fact and lost income in that ANSER ADVISORY have become unjustly enriched by the savings in salaries, benefits, and other employment prerequisites that SCHLICKMAN would otherwise

have earned but for the aforesaid unfair competition by ANSER ADVISORY. ANSER ADVISORY should be made to disgorge and make restitution to SCHLICKMAN and restore all ill-gotten gains attributable to ANSER ADVISORY's unfair competition.

61.     Under the *Business & Professions Code* Section 17203, SCHLICKMAN is entitled to obtain restitution of these funds for ANSER ADVISORY' unfair competition as enumerated herein.

62.     Pursuant to *Business & Professions* Code Section 17203, injunctive relief is necessary to prevent ANSER ADVISORY from continuing to engage in unfair competition as alleged herein.

63.     SCHLICKMAN is informed and believes that ANSER ADVISORY, and persons acting in concert with them, have committed and will continue to commit the above unlawful acts unless restrained or enjoined by this Court. Unless the relief prayed for below is granted, a multiplicity of actions will result. SCHLICKMAN has no plain, speedy, or adequate remedy at law, in that pecuniary compensation would not afford adequate and complete relief. The above-described acts will cause great and irreparable damage to SCHLICKMAN unless ANSER ADVISORY are restrained from committing further illegal acts.

64.     SCHLICKMAN is entitled to an award of attorneys' fees and costs as set forth herein and below. SCHLICKMAN requests relief as described herein and below.

## PRAYER FOR RELIEF

WHEREFORE, SCHLICKMAN prays for judgment as follows:

### ON ALL CAUSES OF ACTION

1.     For compensatory damages, together with prejudgment interest, in an amount not less than $60,008 for each year SCHLICKMAN did not earn at least $60,008, the annual amount she would have earned if ANSER ADVISORY had not wrongfully terminated her;

2.     For reasonable attorney's fees, according to proof, in a minimum amount of $100,000;

3.     For exemplary and punitive damages, in an amount not less than $600,080;

4.     For costs of suit incurred herein;

5.     For pre and post judgment interest of 10% per year;

6.     Tax neutralization; and

7.     For such other and further relief as the court deems just and proper.

On SCHLICKMAN's FEHA Claims:

8.     That ANSER ADVISORY, their successors, agents, representatives, employees and all persons who acted in concert with said ANSER ADVISORY be permanently enjoined from committing any acts of discrimination, relation or other similar acts, including the

violations alleged in all of the Causes of Action herein and are prohibited by the FEHA, including the following affirmative relief:

(a)       For an injunction restraining ANSER ADVISORY from continuing from or maintaining any policy, practice, custom or usage which is retaliatory/discriminatory in nature against any employee exercising his/her rights under the FEHA;

(b)       For an injunction restraining ANSER ADVISORY along with its supervising employees, agents and all those subject to its control or acting in concert with it from causing, encouraging, condoning or permitting the practice of retaliation/discrimination and willful violations of FEHA;

(c)       For affirmative relief requiring ANSER ADVISORY to conduct training of all employees to "sensitize" them to the harmful nature of retaliating/discriminating against an employee exercising his/her rights under FEHA. The proposed plan of education and training should also include violation training and detection, and correction and prevention of such retaliatory/discriminatory practices;

(d)       For affirmative relief requiring ANSER ADVISORY to notify all employees and supervisors, through individual letters and permanent postings in prominent locations in all offices that retaliation violates the FEHA and the consequences of violation of such laws and policies;

(e)       For affirmative relief requiring ANSER ADVISORY to post a notice at those business located in the State of California in which ANSER ADVISORY have at least ten percent (10%) ownership interest, stating that ANSER ADVISORY violated the FEHA, and specifying the remedies in this injunction, and provide proof to the Court, within one-hundred (100) days of the Court's order that such posting has occurred;

(f)       For affirmative relief requiring ANSER ADVISORY to develop clear and effective policies and procedures for employees complaining of retaliation or violations of FEHA so they may have their complaints promptly and thoroughly investigated (by a neutral fact finder) and informal as well as formal processes for hearing, adjudication and appeal of the complaints; and

(g)       For affirmative relief requiring ANSER ADVISORY to develop appropriate sanctions or disciplinary measures for supervisors or other employees who are found to have committed retaliatory acts, including warnings to the offending person and notations

in that person's employment record for reference in the event future complaints are directed against that person, and dismissal where other measures fail.

On the Sixth Cause of Action:

9.    Pursuant to *Business & Professions* Code Section 17203, injunctive relief is necessary to prevent ANSER ADVISORY from continuing to engage in unfair competition as alleged.

Dated:  August 28, 2023

THE LEGAL ADVOCATE

By:_____
    Michelle L. Reynolds, Esq.

Michelle Reynolds, Esq.
Attorneys for Plaintiff CARA SCHLICKMAN

**EXHIBIT 2**

Electronically Filed by Superior Court of California, County of Orange, 08/30/2023 03:16:00 PM.
30-2023-01344722-CU-WT-NJC - ROA # 13 - DAVID H. YAMASAKI, Clerk of the Court By V. Hammer, Deputy Clerk.

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

<table>
<tr><td></td><td><em>FOR COURT USE ONLY<br>(SOLO PARA USO DE LA CORTE)</em></td></tr>
</table>

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
ANSER ADVISORY, formerly known as DHS CONSULTING, LLC; and DOES 1-50.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CARA SCHLICKMAN

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of California, County of
Orange 700 Civic Center Drive West, Santa Ana, CA 92701

CASE NUMBER:
*(Número del Caso):*
30-2023-01344722-CU-WT-NJC

*Judge Craig Griffin*

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michelle Reynolds, Esq., 2110 K Street, 124, Sacramento, CA 95816 (714-474-8097)

DATE: 08/30/2023    DAVID H. YAMASAKI, Clerk of the Court    Clerk, by _____ V. Hammer _____, Deputy
*(Fecha)*                                                     *(Secretario)*                         *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*



**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)      ☒ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

**EXHIBIT 3**

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| **Michelle Reynolds SBN 288234**<br>**THE Legal Advocate, APC**<br>**2110 K Street 124**<br>**Sacramento, CA 95816**<br>TELEPHONE NO.:  **(714) 474-8097**          FAX NO. *(Optional)*:<br><br>E-MAIL ADDRESS *(Optional)*:  **AttorneyMichelleReynolds@gmail.com**<br>ATTORNEY FOR *(Name)*:       **Plaintiff** | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE - CENTRAL**
STREET ADDRESS:  700 Civic Center Drive West
MAILING ADDRESS:  700 Civic Center Drive West
CITY AND ZIP CODE:  Santa Ana, CA 92701
BRANCH NAME:  SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE - CENTRAL

| | |
|---|---|
| PLAINTIFF/PETITIONER:  Cara Schlickman<br><br>DEFENDANT/RESPONDENT:  Anser Advisory, LLC | CASE NUMBER:<br>30-2023-01344722-CU-WT-NJC |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>CSchlickman |

(Separate proof of service is required for each party served.)

1.   At the time of service I was at least 18 years of age and not a party to this action.

2.   I served copies of:  ***Summons; Civil Case Cover Sheet; Complaint; Notice of Case Management Conference; Peremptory Challenge; ADR Information Packet; Notice of Continuance of Case Management Conference***

3.   a.  Party served *(specify name of party as shown on documents served)*: ***Anser Advisory, LLC***

     b.  ☒  Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
     **Anser Advisory, LLC, By Serving: Jennifer Lee**

4.   Address where the party was served: ***7801 Folsom Blvd #202, 202 Sacramento, CA 95826***

5.   I served the party *(check proper box)*
     a.  ☒  **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on*: **3/1/2024** (2) at*: **11:25 AM**
     b.  ☐  **by substituted service.** On*:  at*:  I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

     (1)  ☐  **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

     (2)  ☐  **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

     (3)  ☐  **(physical address unknown)** a person of at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

     (4)  ☐  I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents:
     on*:                    from*:                    **or** ☐ a declaration of mailing is attached.

**Page 1 of 3**

POS-010 [Rev. January 1, 2007]                    **PROOF OF SERVICE OF SUMMONS**

**Invoice # 9184868-01**

| PLAINTIFF/PETITIONER:     Cara Schlickman | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:     Anser Advisory, LLC | 30-2023-01344722-CU-WT-NJC |

(5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

5.  c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1) on:                                                    (2) from:

(3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. (*Attach completed* Notice and Acknowledgment of Receipt.) (Code Civ. Proc., § 415.30.)

(4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** (specify means of service and authorizing code section):

☐ Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:
a. ☐ as an individual defendant.
b. ☐ as the person sued under the fictitious name of (specify):
c. ☐ as occupant.
d. ☒ On behalf of (specify): **Anser Advisory, LLC**
    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☒ other: **LLC under corporation code 17701.16** |

7.  **Person who served papers**
a. Name: **John Arnold**
b. Address: **8801 Folsom Blvd 165, Sacramento, CA, CA 95826**
c. Telephone number: **916-446-2051**
d. **The fee** for service was: **$130.00**
e. I am:
    (1) ☐ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☒ a registered California process server:
        (i) ☐ owner  ☐ employee  ☒ independent contractor.
        (ii) Registration No.: **2015-39**
        (iii) County: **Sacramento**

| PLAINTIFF/PETITIONER: Cara Schlickman | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Anser Advisory, LLC | 30-2023-01344722-CU-WT-NJC |

8.  ☒  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

▶ _____

**John Arnold**                    Date: **03/01/2024**

---

POS-010 [Rev. January 1, 2007]          **PROOF OF SERVICE OF SUMMONS**          **Page 3 of 3**

**Invoice#: 9184868-01**

**EXHIBIT 4**

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| **Michelle Reynolds SBN 288234**<br>**THE Legal Advocate, APC**<br>**2110 K Street 124**<br>**Sacramento, CA 95816**<br>TELEPHONE NO.: **(714) 474-8097**    FAX NO. (Optional):<br><br>E-MAIL ADDRESS (Optional): **AttorneyMichelleReynolds@gmail.com**<br>ATTORNEY FOR (Name): **Plaintiff** | |

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE - CENTRAL**<br>STREET ADDRESS: 700 Civic Center Drive West<br>MAILING ADDRESS: 700 Civic Center Drive West<br>CITY AND ZIP CODE: Santa Ana, CA 92701<br>BRANCH NAME: SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE - CENTRAL | |

| | |
|---|---|
| PLAINTIFF/PETITIONER: Cara Schlickman<br>DEFENDANT/RESPONDENT: Anser Advisory, LLC | CASE NUMBER:<br>30-2023-01344722-CU-WT-NJC |

| | |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>CSchlickman |

(Separate proof of service is required for each party served.)

1.    At the time of service I was at least 18 years of age and not a party to this action.

2.    I served copies of: *Summons; Civil Case Cover Sheet; Complaint; Notice of Case Management Conference; Peremptory Challenge; ADR Information Packet; Notice of Continuance of Case Management Conference*

3.    a. Party served (specify name of party as shown on documents served): *Anser Advisory Management, LLC*

   b.  ☒  Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) (specify name and relationship to the party named in item 3a): **Anser Advisory Management, LLC, By Serving: Jennifer Lee**

4.    Address where the party was served: *7801 Folsom Blvd #202, 202 Sacramento, CA 95826*

5.    I served the party (check proper box)
   a.  ☒  **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on: *3/1/2024* (2) at: **11:25 AM**
   b.  ☐  **by substituted service.** On: at: I left the documents listed in item 2 with or in the presence of (name and title or relationship to person indicated in item 3):

   (1)  ☐  **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

   (2)  ☐  **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3)  ☐  **(physical address unknown)** a person of at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

   (4)       I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at
        ☐  the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents:
        on:            from:            or  ☐ a declaration of mailing is attached.

**Page 1 of 3**

| | | |
|---|---|---|
| POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | |
| | | Invoice # 9184868-03 |

| PLAINTIFF/PETITIONER: Cara Schlickman | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Anser Advisory, LLC | 30-2023-01344722-CU-WT-NJC |

     (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

5.   c.  ☐  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

     (1) on*:*                         (2) from*:*

     (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. (*Attach completed* Notice and Acknowledgment of Receipt.) (Code Civ. Proc., § 415.30.)

     (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

   d.  ☐  **by other means** *(specify means of service and authorizing code section):*

     ☐  Additional page describing service is attached.

6.   The "Notice to the Person Served" (on the summons) was completed as follows:

   a.  ☐  as an individual defendant.

   b.  ☐  as the person sued under the fictitious name of *(specify):*

   c.  ☐  as occupant.

   d.  ☒  On behalf of *(specify):* **Anser Advisory Management, LLC** under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☒ other: **LLC under corporation code 17701.16** |

7.  **Person who served papers**
   a. Name: **John Arnold**
   b. Address: **8801 Folsom Blvd 165, Sacramento, CA, CA 95826**
   c. Telephone number: **916-446-2051**
   d. **The fee** for service was: **$65.00**
   e. I am:
     (1) ☐ not a registered California process server.
     (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
     (3) ☒ a registered California process server:
        (i) ☐ owner  ☐ employee  ☒ independent contractor.
        (ii) Registration No.: **2015-39**
        (iii) County: **Sacramento**

| POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | **Page 2 of 3** |
|---|---|---|

| | | |
|---|---|---|
| PLAINTIFF/PETITIONER: | Cara Schlickman | CASE NUMBER: |
| DEFENDANT/RESPONDENT: | Anser Advisory, LLC | 30-2023-01344722-CU-WT-NJC |

8.    ☒    **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

 

**John Arnold**        Date: **03/01/2024**

---

POS-010 [Rev. January 1, 2007]        **PROOF OF SERVICE OF SUMMONS**        **Page 3 of 3**

**EXHIBIT 5**

 Gmail

Michelle Reynolds, Esq. <attorneymichellereynolds@gmail.com>

---

## Re: Cara Schlickman v. Anser Advisory-- Extension on Responsive Pleadings
1 message

---

**Michelle Reynolds** <attorneymichellereynolds@gmail.com>  Tue, Mar 19, 2024 at 11:12 PM
To: "Marissa L. Lyftogt" <mlyftogt@wilsonturnerkosmo.com>
Cc: "Kara N. Malneritch" <KMalneritch@wilsonturnerkosmo.com>

Good evening Marissa,

You're welcome for my time. Likewise, I appreciate your time too. For your records, not just per
your request, attached to this email are the POSs for all three Anser entities. Prior to agreeing to
the 15-day extension for all Anser entities, please kindly confirm your firm represents Anser
Advisory, LLC; Anser Advisory Consulting, LLC; and Anser Advisory Management, LLC.

Respectfully,
*Michelle L. Reynolds, Esq.*



***THE Legal Advocate...Assert Your Employment Rights!***
***Employment Law Litigation also experienced in DFEH complaints, DIR-DLSE hearings, EDD appeals,***
***EEOC charges, LWDA PAGA claims, and Workplace Investigations for both employees and employers.***

*Orange County Office*
*2030 East 4th Street, Building E, Suite 204*
*Santa Ana, CA 92705*
*Phone: (714) 474-8097*
*E-Fax: (714) 845-9963*
*AttorneyMichelleReynolds@gmail.com*
*https://thelegaladvocate.wixsite.com/thelegaladvocate*

*Sacramento County Office*
*2110 K Street, 124*
*Sacramento, CA 95816*
*Phone: (916) 245-0638*
*E-Fax: (714) 845-9963*
*AttorneyMichelleReynolds@gmail.com*
*https://thelegaladvocate.wixsite.com/thelegaladvocate*

**NOTICE TO POTENTIAL CLIENTS: Nothing contained herein should be construed as creating or intending to
create an attorney-client relationship. Any and all communications are undertaken in an effort to evaluate
potential claims and determine if THE Legal Advocate will be able or is best suited to represent you. Unless and
until a written representation agreement has been fully executed (i.e. signed) between THE Legal Advocate and
yourself, NO action will be taken on your behalf.** Unless and until that time, solely you are responsible for any
statute(s) of limitations (the deadline for filing a lawsuit) or other deadlines for your case or potential case. Most lawsuits
must be filed within a certain amount of time. In general, once the statute of limitations on a case "runs out," the legal
claim is no longer valid. **This notice can be modified only in writing unilaterally by TLA.**

CONFIDENTIAL EMAIL NOTICE: Pursuant to the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521, the
information contained in this electronic communication is confidential and may also be legally protected as attorney-client

privileged and/or constitute attorney work product. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, you are hereby notified pursuant to California Evidence Code § 952 and California Code of Civil Procedure § 2018.030, any use, dissemination, distribution and/or reproduction of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately and permanently delete this message from your system. Thank you.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message may contain advice relating to a Federal tax issue, unless expressly stated otherwise, the advice is not intended or written to be used and it cannot be used by the recipient or any other taxpayer for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

**"A law is valuable not because it is law, but because there is right in it"**. Henry Ward Beecher

On Tue, Mar 19, 2024 at 10:37 PM Marissa L. Lyftogt <mlyftogt@wilsonturnerkosmo.com> wrote:

> Hi Michelle:
>
> Thanks for taking the time to speak with me last week about this case. If you could please provide me with courtesy copies of the proofs of service for the other two Anser entities you served, I would greatly appreciate it.
>
> I would also appreciate the 15 day extension on the responsive pleading deadline for all three Anser entities. Please confirm at your convenience.
>
> Thank you and I hope you first week of trial is going well.
>
> Marissa
>
> **Marissa L. Lyftogt | Partner (she/hers)**
> **WILSON TURNER KOSMO LLP**
> 402 West Broadway **|** Suite 1600 **|** San Diego, California 92101
> **P:** 619-236-9600 **| F:** 619-236-9669
> mlyftogt@wilsonturnerkosmo.com
> www.wilsonturnerkosmo.com
>
> This electronic transmission contains information from the law firm of Wilson Turner Kosmo LLP, which may be confidential or protected by the attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the content of this message is prohibited. If you have received this communication in error, please notify us immediately by reply e-mail and delete the original message

**3 attachments**


**2024-03-01 POS RE Summons, etc. for Anser Advisory Management, LLC.pdf**
242K

**2024-03-01 POS RE Summons, etc. for Anser Advisory, LLC.pdf**
243K

**2024-03-01 POS RE Summons, etc. for Anser Advisory Consulting, LLC.pdf**
242K

**EXHIBIT 6**

**Secretary of State**
**Statement of Information**
(Limited Liability Company)

**LLC-12**

91

20-321241

**FILED**
Secretary of State
State of California

**DEC 2 8 2020**

WNF/CC
*Above Space For Office Use Only*

**IMPORTANT** — This form can be filed online at *bizfile.sos.ca.gov.*

*Read instructions* before completing this form.

**Filing Fee – $20.00**

**Copy Fees** – First page $1.00; each attachment page $0.50;
Certification Fee - $5.00 plus copy fees

**1. Limited Liability Company Name** (Enter the exact name of the LLC. If you registered in California using an alternate name, *see instructions.*)

ANSER ADVISORY, LLC

| 2. 12-Digit Secretary of State Entity (File) Number | 3. State, Foreign Country or Place of Organization (only if formed outside of California) |
|---|---|
| 201818010011 | DELAWARE |

**4. Business Addresses**

| a. Street Address of Principal Office - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 2677 North Main Street Suite 400 | Santa Ana | CA | 92705 |

| b. Mailing Address of LLC, if different than Item 4a | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

| c. Street Address of California Office, if Item 4a is not in California - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | CA | |

**5. Manager(s) or Member(s)**

If no **managers** have been appointed or elected, provide the name and address of each **member**. At least one name **and** address must be listed. If the manager/member is an individual, complete Items 5a and 5c (leave Item 5b blank). If the manager/member is an entity, complete Items 5b and 5c (leave Item 5a blank). Note: The LLC cannot serve as its own manager or member. If the LLC has additional managers/members, enter the name(s) and address(es) on *Form LLC-12A.*

| a. First Name, if an individual - Do not complete Item 5b | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| b. Entity Name - Do not complete Item 5a |
|---|
| National Capital Improvement Corp. |

| c. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 2677 North Main Street Suite 400 | Santa Ana | CA | 92705 |

**6. Service of Process** (Must provide either Individual OR Corporation.)

**INDIVIDUAL** – Complete Items 6a and 6b only. Must include agent's full name and California street address.

| a. California Agent's First Name (if agent is not a corporation) | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| b. Street Address (if agent is not a corporation) - Do not enter a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | CA | |

**CORPORATION** – Complete Item 6c only. Only include the name of the registered agent Corporation.

| c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 6a or 6b |
|---|
| COGENCY GLOBAL INC. C2003899 |

**7. Type of Business**

Describe the type of business or services of the Limited Liability Company

Management Consulting Firm

**8. Chief Executive Officer, if elected or appointed**

| a. First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| b. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

**9. The Information contained herein, including any attachments made part of this document, is true and correct.**

| 12/15/20 | Bryan Carruthers | President | |
|---|---|---|---|
| Date | Type or Print Name of Person Completing the Form | Title | Signature |

LLC-12 (REV 01/2018)

2018 California Secretary of State
bizfile.sos.ca.gov

**EXHIBIT 7**

BA20231725400



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**STATEMENT OF INFORMATION**
**LIMITED LIABILITY COMPANY**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
| --- |
| **-FILED-** |
| File No.: BA20231725400 |
| Date Filed: 11/10/2023 |

| Entity Details | |
| --- | --- |
| Limited Liability Company Name | ANSER ADVISORY, LLC |
| Entity No. | 201818010011 |
| Formed In | DELAWARE |

| Street Address of Principal Office of LLC | |
| --- | --- |
| Principal Address | 2677 N MAIN ST STE 400 SANTA ANA, CA 92705 |

| Mailing Address of LLC | |
| --- | --- |
| Mailing Address | 2677 N MAIN ST STE 400 SANTA ANA, CA 92705 |
| Attention | |

| Street Address of California Office of LLC | |
| --- | --- |
| Street Address of California Office | 2677 N MAIN ST STE 400 SANTA ANA, CA 92705 |

Manager(s) or Member(s)

| Manager or Member Name | Manager or Member Address |
| --- | --- |
| NATIONAL CAPITAL IMPROVEMENT CORP | 2677 N MAIN ST STE 400 SANTA ANA, CA 92705 |

| Agent for Service of Process | |
| --- | --- |
| California Registered Corporate Agent (1505) | CORPORATE CREATIONS NETWORK INC. Registered Corporate 1505 Agent |

| Type of Business | |
| --- | --- |
| Type of Business | MANAGEMENT CONSULTING FIRM |

| Email Notifications | |
| --- | --- |
| Opt-in Email Notifications | Yes, I opt-in to receive entity notifications via email. |

Chief Executive Officer (CEO)

| CEO Name | CEO Address |
| --- | --- |
| Bryan Carruthers | 2677 N MAIN ST STE 400 SANTA ANA, CA 92705 |

Labor Judgment

No Manager or Member, as further defined by California Corporations Code section 17702.09(a)(8), has an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal is pending, for the violation of any wage order or provision of the Labor Code.

B2246-2210 11/10/2023 11:16 AM Received by California Secretary of State

Electronic Signature

☒ By signing, I affirm under penalty of perjury that the information herein is true and correct and that I am authorized by California law to sign.

*Rachel Joseph, Special Manager*
Signature

*11/10/2023*
Date

B2246-2211 11/10/2023 11:16 AM Received by California Secretary of State

**EXHIBIT 8**




BA20241012232

B2762-4565 05/23/2024 1:31 PM Received by California Secretary of State



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**STATEMENT OF INFORMATION**
**LIMITED LIABILITY COMPANY**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 657-5448

<table>
<tr><td colspan="2">For Office Use Only</td></tr>
<tr><td colspan="2">**-FILED-**</td></tr>
<tr><td>File No.: BA20241012232</td></tr>
<tr><td>Date Filed: 5/23/2024</td></tr>
</table>

**Entity Details**

| | |
|---|---|
| Limited Liability Company Name | ANSER ADVISORY, LLC |
| Entity No. | 201818010011 |
| Formed In | DELAWARE |

**Street Address of Principal Office of LLC**

| | |
|---|---|
| Principal Address | 500 W. MADISON ST. CHICAGO, IL 60661 |

**Mailing Address of LLC**

| | |
|---|---|
| Mailing Address | 500 W. MADISON ST. CHICAGO, IL 60661 |
| Attention | Attention Claudia Anzur/Accenture |

**Street Address of California Office of LLC**

| | |
|---|---|
| Street Address of California Office | 2677 N MAIN ST STE 400 SANTA ANA, CA 92705 |

**Manager(s) or Member(s)**

| Manager or Member Name | Manager or Member Address |
|---|---|
| + Aaron Holmes | 500 W. MADISON ST. CHICAGO, IL 60661 |
| + Daniel F. Finn | 500 W. MADISON ST. CHICAGO, IL 60661 |

**Agent for Service of Process**

| | |
|---|---|
| California Registered Corporate Agent (1505) | CORPORATE CREATIONS NETWORK INC. Registered Corporate 1505 Agent |

**Type of Business**

| | |
|---|---|
| Type of Business | MANAGEMENT CONSULTING FIRM |

**Email Notifications**

| | |
|---|---|
| Opt-in Email Notifications | Yes, I opt-in to receive entity notifications via email. |

**Chief Executive Officer (CEO)**

| CEO Name | CEO Address |
|---|---|
| | |

**Labor Judgment**

No Manager or Member, as further defined by California Corporations Code section 17702.09(a)(8), has an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal is pending, for the violation of any wage order or provision of the Labor Code.

Electronic Signature

☒   By signing, I affirm under penalty of perjury that the information herein is true and correct and that I am authorized by California law to sign.

*Junior Jayseus, Special Manager*                                      *05/23/2024*

Signature                                                        Date

B2762-4566  05/23/2024  1:31 PM  Received by California Secretary of State

**EXHIBIT 9**



# Anser Advisory

Consulting redefined

Business Consulting and Services

Santa Ana, California · 11K followers · 501-1K employees

**+ Follow**    **✈ Message**    **⋯**

Home    **About**    Posts    Jobs    Life    People    Insights

## Overview

We're strategic thinkers and complex problem solvers.

Logical. Creative. Loyal.

Anser Advisory has a singular purpose: successfully guiding programs and projects from concept to closeout.  At the intersection of thoughtful analysis and creative innovation, we identify and solve the most demanding challenges our clients face. We believe problem-solving is a challenge to be delighted in, not overcome, and we engage the best minds from every field to develop intelligent processes that are both dynamic and efficient.

- We are trusted advisors in finance and compliance.

- We are design process and delivery method innovators.

- We are project controls, project management, and construction management collaborators.

We are a national firm with deep ties and commitment to the local communities where we live, work, and play.

DISCLAIMER: Anser Advisory is not affiliated with Analytic Services Inc., a nonprofit corporation that does business as ANSER.

**Website**
http://www.anseradvisory.com

**Industry**
Business Consulting and Services

**Company size**
501-1,000 employees
1,543 associated members ℹ

**Headquarters**
Santa Ana, California



**Interested in working with us in the future?**

Privately share your profile with our recruiters – you'll be noted as expressing interest for up to a year. Learn more

I'm interested

## Locations (2)

Interact with the map to explore all locations



Ocoee

About    Accessibility    Talent Solutions

Community Guidelines    Careers    Marketing Solutions

Privacy & Terms ▾    Ad Choices    Advertising

Sales Solutions    Mobile    Small Business

Safety Center

**Questions?**
Visit our Help Center.

**Manage your account and privacy**
Go to your Settings.

**Recommendation transparency**
Learn more about Recommended Content.

Select Language
English (English) ▾

LinkedIn Corporation © 2024



Promoted •••

Michelle, explore jobs at **Anser Advisory** that match your skills

Anser Advisory
Management Consulting

See jobs

## Affiliated pages



**LaFata Contract Services, LLC**
Utilities
Acquisition

+ Follow

**Government Services Group**
Government Administration
Acquisition

+ Follow

**Anser Education**
Education Management
Subsidiary

+ Follow

## Pages people also viewed

**Accenture**
Business Consulting and Services
12,101,692 followers

Chad & 14 other connections follow this page

+ Follow

**LaFata Contract Services, LLC**
Utilities
3,891 followers

+ Follow

**Markon**
Business Consulting and Services
4,758 followers

+ Follow

Show all →

## People also follow

**Orange County Superior Court**
Administration of Justice
3,949 followers

Michelle & 23 other connections follow this page

+ Follow

**Manning Kass**
Law Practice
3,222 followers

Mike Hakimi & 14 other connections follow this page

+ Follow

**CANEI™**
Law Practice
486 followers

Brooke & 18 other connections follow this page



Show all →

Promoted •••



**Criminal Lawyer Needed**

Get a Steady Flow of New Cases Via
Email. View Cases Today.

**Mahyar** & 1 other connection
also follow LegalMatch

**$2,500 Scholarship at WGU**

Earn a fully accredited BSHIM degree
without the debt.

**Teresa** also follows Western
Governors University

**EXHIBIT 10**

File # **201913710118**

| | | LLC-1A |
|---|---|---|

### State of California
### Secretary of State

3475764 - Out

**Limited Liability Company**
**Articles of Organization - Conversion**

**FILED** *Emp*
Secretary of State
State of California

*ICC*  **MAY 17 2019** /m

IMPORTANT — Read all instructions before completing this form.

This Space For Filing Use Only

---

**Converted Entity Information**

1. Name of Limited Liability Company (The name must include the words Limited Liability Company or the abbreviations LLC or L.L.C. The words Limited and Company may be abbreviated to Ltd. and Co., respectively.)

   DHS Consulting, LLC

2. The purpose of the limited liability company is to engage in any lawful act or activity for which a limited liability company may be organized under the California Revised Uniform Limited Liability Company Act.

3. The limited liability company will be managed by (check only one):

   [ ] One Manager      [ ] More Than One Manager      [✓] All Limited Liability Company Member(s)

| 4. Initial Street Address of Limited Liability Company's Designated Office in CA | City | State | Zip Code |
|---|---|---|---|
| 1820 East First Street, Suite 410 | Santa Ana | CA | 92705 |

| 5. Initial Mailing Address of Limited Liability Company, if different from Item 4 | City | State | Zip Code |
|---|---|---|---|
| | | | |

6. Initial Agent for Service of Process: Item 6a: List the name of an individual or a corporation registered in CA under California Corporations Code section 1505 that agrees to be your agent for service of process. You may **not** list the converted entity as the agent. Item 6b: If the agent is an individual, list the agent's CA business or residential street address. Item 6c: If the agent is an individual and the converting entity is a CA corporation, limited partnership or general partnership, list the the agent's mailing address. **Do not** list an address if the agent is a CA registered corporate agent as the address for service of process is already on file.

   a. Name of Agent For Service of Process

   Sudhir Damle

| b. If an individual, Street Address of Agent for Service of Process - Do not list a P.O. Box | City | State | Zip Code |
|---|---|---|---|
| 1820 East First Street, Suite 410 | Santa Ana | CA | 92705 |

| c. If an individual, Mailing Address of Agent for Service of Process | City | State | Zip Code |
|---|---|---|---|
| 1820 East First Street, Suite 410 | Santa Ana | CA | 92705 |

---

**Converting Entity Information**

7. Name of Converting Entity

   DHS Consulting, Inc.

| 8. Form of Entity | 9. Jurisdiction | 10. CA Secretary of State File Number, if any |
|---|---|---|
| Corporation | California | C3475764 |

11. The principal terms of the plan of conversion were approved by a vote of the number of interests or shares of each class that equaled or exceeded the vote required. If a vote was required, the following was required for each class:

| The class and number of outstanding interests entitled to vote. | AND | The percentage vote required of each class. |
|---|---|---|
| 214,500 shares of common stock | | 51% |

---

**Additional Information**

12. Additional information set forth on the attached pages, if any, is incorporated herein by this reference and made part of this certificate.

13. I certify under penalty of perjury that the contents of this document are true. I declare I am the person who executed this instrument, which execution is my act and deed.

| Signature of Authorized Person | Sudhir Damle, President |
|---|---|
| | Type or Print Name and Title of Authorized Person |
| Signature of Authorized Person | Sudhir Damle, Treasurer |
| | Type or Print Name and Title of Authorized Person |

LLC-1A (REV 10/2018)                    APPROVED BY SECRETARY OF STATE

**EXHIBIT 11**



**Secretary of State**
**Amendment to Articles of**
**Organization of a**
**Limited Liability Company (LLC)**

| LLC-2 |

**IMPORTANT** — *Read Instructions* **before completing this form.**

**Filing Fee** — **$30.00**

**Copy Fees** — First page $1.00; each attachment page $0.50; Certification Fee - $5.00

**Note**: You must file a Statement of Information (Form LLC-12), to change the business address(es) of the LLC or to change the name or address of the LLC's manager(s) and/or agent for service of process, which can be filed online at *llcbizfile.sos.ca.gov/SI*.

**FILED**
Secretary of State
State of California

**DEC 0 6 2019**   SYO

*Above Space For Office Use Only*

**1.  LLC Exact Name** (Enter the exact name on file with the California Secretary of State.)

DHS CONSULTING, LLC

**2.  LLC 12-Digit Entity (File) Number** (Enter the exact 12-digit Entity (File) Number issued by the California Secretary of State.)

| 2 | 0 | 1 | 9 | 1 | 3 | 7 | 1 | 0 | 1 | 1 | 8 |

**3.  New LLC Name (If Amending)** (*See Instructions* – List the proposed LLC name exactly as it is to appear on the records of the California Secretary of State. The name must contain an LLC identifier such as LLC or L.L.C. "LLC" will be added, if not included.)

Anser Advisory Management, LLC

**4.  Management (If Amending)** (Select **only** one box)

The LLC will be managed by:

☐  One Manager       ☐  More than One Manager       ☐  All LLC Member(s)

**5.  Purpose Statement** (Do not alter Purpose Statement.)

The purpose of the limited liability company is to engage in any lawful act or activity for which a limited liability company may be organized under the California Revised Uniform Limited Liability Company Act.

**6.  Additional Amendment(s)** set forth on attached pages, if any, are incorporated herein by reference and made part of this Form LLC-2. (All attachments should be 8½ x 11, one-sided, legible and clearly marked as an attachment to this form LLC-2.)

**Signature**

By signing, I affirm under penalty of perjury that the information herein is true and correct and that I am authorized by California law to sign.

_____
Sign here

Bryan Carruthers, President of Anser Advisory, LLC, Sole Member

Print your name here

LLC-2 (REV 08/2019)

2019 California Secretary of State
bizfile.sos.ca.gov

**EXHIBIT 12**



BA20231961315

**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**STATEMENT OF INFORMATION**
**LIMITED LIABILITY COMPANY**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

For Office Use Only

**-FILED-**

File No.: BA20231961315

Date Filed: 12/28/2023

| Entity Details | |
|---|---|
| Limited Liability Company Name | ANSER ADVISORY MANAGEMENT, LLC |
| Entity No. | 201913710118 |
| Formed In | CALIFORNIA |

| Street Address of Principal Office of LLC | |
|---|---|
| Principal Address | 2677 NORTH MAIN STREET SUITE 400 SANTA ANA, CA 92705 |

| Mailing Address of LLC | |
|---|---|
| Mailing Address | 2677 NORTH MAIN STREET SUITE 400 SANTA ANA, CA 92705 |
| Attention | |

| Street Address of California Office of LLC | |
|---|---|
| Street Address of California Office | 121 W. LEXINGTON DR. SUITE 334 GLENDALE, CA 91203 |

Manager(s) or Member(s)

| Manager or Member Name | Manager or Member Address |
|---|---|
| Anser Advisory, LLC | 2677 North Main Street Suite 400 Santa Ana, CA 92705 |

| Agent for Service of Process | |
|---|---|
| California Registered Corporate Agent (1505) | CORPORATE CREATIONS NETWORK INC. Registered Corporate 1505 Agent |

| Type of Business | |
|---|---|
| Type of Business | Management Consulting Firm |

| Email Notifications | |
|---|---|
| Opt-in Email Notifications | Yes, I opt-in to receive entity notifications via email. |

Chief Executive Officer (CEO)

| CEO Name | CEO Address |
|---|---|
| None Entered | |

Labor Judgment

No Manager or Member, as further defined by California Corporations Code section 17702.09(a)(8), has an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal is pending, for the violation of any wage order or provision of the Labor Code.

B2369-8183  12/28/2023  3:07 PM  Received by California Secretary of State

Electronic Signature

☒ By signing, I affirm under penalty of perjury that the information herein is true and correct and that I am authorized by California law to sign.

_Jenisa Irizarry_

Signature

_12/28/2023_

Date

B2369-8184 12/28/2023 3:07 PM Received by California Secretary of State

**EXHIBIT 13**

Electronically Filed by Superior Court of California, County of Orange, 04/18/2024 11:56:00 PM.
30-2023-01344722-CU-WT-WJC - ROA # 37 - DAVID H. YAMASAKI, Clerk of the Court By R. Baker, Deputy Clerk.

Case 8:24-cv-01076-DOC-KES   Document 13   Filed 06/18/24   Page 58 of 91   Page ID
#:251

Michelle L. Reynolds, Esq., SBN 288234
**THE Legal Advocate**
2110 K Street, 124
Sacramento, CA 95816
Phone: (714) 474-8097
Fax: (714) 845-9963
Email: AttorneyMichelleReynolds@gmail.com

Attorney for Plaintiff CARA SCHLICKMAN

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF ORANGE COUNTY**

| | |
|---|---|
| CARA SCHLICKMAN,<br><br>    Plaintiff,<br><br>    vs.<br><br>ANSER ADVISORY, FORMERLY KNOWN AS DHS CONSULTING, LLC; AND DOES 1- 50.<br><br><br><br>ANSER ADVISORY, LLC; ANSER ADVISORY MANAGEMENT, LLC formerly known as DHS CONSULTING, INC./LLC; SUDIR DAMLE, an individual; GARY COOLEY, an individual; MARLENE HUMBERT, an individual; LOYELLA COUTTS, an individual; and DOES 1-10.<br><br>    Defendants. | **Case No.: 30-2023-01344722-CU-WT-WJC**<br><br>Reassigned for all purposes to Judge: **Hon. Sheila Recio**<br><br>**FIRST AMENDED COMPLAINT FOR**<br>**Government Code Violations:**<br>1.  Discrimination Based On Disability [Gov. Code § 12940(a)];<br>2.  Discrimination Based On Sex, Gender, Pregnancy Or Medical Conditions Related To Pregnancy, And/Or Childbirth Or Medical Conditions Related To Childbirth [Gov. Code §§ 12926(r)(1)(A) and/or (B); Gov. Code § 12940(a)];<br>3.  Failure To Accommodate [Gov't Code § 12940(m)];<br>4.  Failure To Engage In A Timely, Good Faith, Interactive Process To Determine Effective Reasonable Accommodations [Gov. Code § 12940(n)];<br>5.  Unlawful Employment Practices Concerning Pregnancy, Childbirth, Related Medical Condition [Gov. Code § 12945];<br>6.  Wrongful Termination In Violation Of Public Policy, Specifically California's FEHA);<br>**Labor Code Violations:**<br>7.  Failure To Pay Minimum Wages, Interest Thereon, Reasonable Attorney's Fees, And Costs Of Suit [Lab. Code §§ 558.1, 1194, 1197, 1197.1(a)(3)]; |

8. Liquidated Damages In An Amount Equal To The Minimum Wages Unlawfully Unpaid And Interest Thereon [Lab. Code § 1194.2];
9. Failure To Pay Sick Leave [Lab. Code § 246];
10. Failure To Pay Overtime Wages, Interest Thereon, Reasonable Attorney's Fees, And Costs Of Suit [Lab. Code §§ 510, 558.1, and 1194];
11. Missed, Interrupted, On-Call And/Or Untimely Meal Periods (Lab. Code §§ 226.7(b) & (c), 512, and 558.1);
12. Missed, Interrupted, On-Call And/Or Untimely Rest Breaks [Lab. Code §§ 226.7 and 558.1];
13. Lab. Code § 203 Waiting Time Penalties For Willful Violation Of Lab. Code § 201 [Lab. Code § 558.1];
14. Failure To Reimburse All Necessary Business Expenses [Lab. Code §§ 558.1 and 2802];

**Business & Professions Code Violations**

15. Unfair Business Practices [B & P Code § 17200 et. seq.]; and
16. Unfair Competition [B & P Code § 17200 et. seq.].

**[DEMAND FOR A JURY TRIAL]**

Plaintiff CARA SCHLICKMAN (SCHLICKMAN or Plaintiff)—based upon her own knowledge and acts, unless specifically stated based on information and belief—alleges and complains of the unlawful violations committed by entity defendants ANSER ADVISORY, LLC and ANSER ADVISORY MANAGEMENT, LLC, formerly known as DHS CONSULTING, INC./LLC, which are hereinafter referred collectively as "ANSER ADVISORY"; and the following individual defendants: SUDIR DAMLE; GARY COOLEY; MARLENE HUMBERT, an individual; LOYELLA COUTTS, an individual; plus DOES 1-10. Both entity and individual defendants are hereinafter collectively referred to as Defendants.

## INTRODUCTION

1. This action arises out of Defendants' numerous violations of California's Government Code, specifically the Fair Employment and Housing Act (FEHA); Labor Code; and Business and Professions Code.

## JURISDICTION & VENUE

2. Pursuant to California Code of Civil Procedure (CCP) § 395(a), the superior court in the county

where the Defendants or some of them reside at the commencement of the action is the proper court for the trial of the action.

3.    At the commencement of and at all relevant dates relating to this action, ANSER ADVISORY conducted/s business in and/or from the city of Santa Ana located in Orange County, California.

4.    Some of the individual defendants, for example SUDIR DAMLE, also reside in Orange County, California.

5.    On information and belief, so too do DOES 1-10.

6.    There is no federal question at issue as the claims herein are based solely on California law.

7.    Also, there is no diversity of citizenship amongst the Parties because at least one entity Defendant, specifically ANSER ADVISORY MANAGEMENT, LLC, was incorporated in California according to its relevant Statement(s) Of Information filed with California's Secretary of State.

8.    Thus, jurisdiction and venue are proper in the Superior Court of California, County of Orange.

## PARTIES

**Plaintiff:**

9.    On February 5, 2019, *Plaintiff*, SCHLICKMAN, was offered employment as an Administrative Manager for DHS CONSULTING, INC., a California corporation. SCHLICKMAN's first day on the job was March 4, 2019. Originally, SCHLICKMAN directly reported to DHS CONSULTING's President, SUDIR DAMLE. This changed when SUDIR DAMLE became aware that SCHLICKMAN was pregnant. SCHLICKMAN was reassigned to then report directly to LOYELLA COUTTS who, according to her LinkedIn profile, was the Executive Human Resources Partner from February 2019 to April 2021. SCHLICKMAN'S timesheets reflect this direct report change. Due to complications with her pregnancy, SCHLICKMAN took Pregnancy Disability Leave (PDL) starting October 14, 2919, and was ultimately cleared by her physician to return to work on October 29, 2020
However, upon the end of

**Entity Defendants:**

10. **ANSER ADVISORY MANAGEMENT, LLC**: DHS CONSULTING, INC. was converted on May 17, 2019 to DHS CONSULTING, LLC, a Limited Liability Company formed in California and owned by manager/member SUDHIR DAMLE. On information and belief, on June 19, 2019, ANSER ADVISORY announced its acquisition of DHS CONSULTING, LLC. *See* https://www.businesswire.com/news/home/20190619005681/en/Anser-Advisory-Announces-DHS-Consulting-Acquisition-Expanding-Market-Expertise. According to this announcement, "Mr. Damle

will become President of Anser Advisory, working directly with Chief Executive Officer, Bryan Carruthers. Additionally, Gary Cooley and Melanie Estes of DHS will join Anser as Chief Operating Officer and Chief Delivery Officer, respectively." On December 6, 2019, DHS CONSULTING, LLC amended its name to ANSER ADVISORY MANAGEMENT, LLC through a document titled "Secretary of State Amendment to Articles of Organization of a Limited Liability Company (LLC)" that was signed by "Bryan Carruthers, President of Anser Advisory, LLC, Sole Member".

11. **ANSER ADVISORY, LLC** is the Manager or Member of ANSER ADVISORY MANAGEMENT, LLC according to ANSER ADVISORY MANAGEMENT, LLC's Statement Of Information filed April 26, 2023 and signed by Co-Defendant GARY COOLEY. Both ANSER ADVISORY, LLC and ANSER ADVISORY MANAGEMENT, LLC share the same principal business address of 2677 N. Main Street, Suite 400, Santa Ana, CA 92705.

12. Plaintiff knows all entity Defendants—including ANSER ADVISORY MANAGEMENT, LLC and ANSER ADVISORY, LLC—are private entities doing business in the State of California that regularly employ 5 or more employees within California alone and are subject to suit under the California Fair Employment Housing Act (FEHA), California Government Code § 12900 to § 12999.

**Individual Defendants:**

13. **GARY COOLEY** was the Chief Operating Officer and Corporate Development Director of ANSER ADVISORY, LLC from November 2018 to March 2021, a time period covering the entirety of SCHLICKMAN's employment. According to his LinkedIn profile, as COO and CDD, COOLEY was a "[m]ember of [the] Executive Leadership Team responsible for development of strategic partnerships and mergers and acquisitions that fit the company's aggressive acquisition strategy." He was also "[r]esponsible for leading marketing, business development and strategic growth initiatives as well as managing the core operating activities including Finance, Human Resources, Information Technology and Risk Management. On information and belief, given his role, SCHLICKMAN believes COOLEY was one of the ultimate decision makers regarding her wrongful termination from ANSER ADVISORY MANAGEMENT, LLC. Additionally, COOLEY verbally berated/reprimanded SCHLICKMAN while both of them were in a fish-bowl like glass office with onlookers, yelling at SCHLICKMAN.

14. **SUDIR DAMLE** was the President of DHS CONSULTING from August 2012 to May 2019 according to his LinkedIn profile. Also, according to his LinkedIn profile, he then served as the President of ANSER ADVISORY, LLC from May 2019 to March 2022. Originally, SCHLICKMAN directly reported to DHS CONSULTING's President, SUDIR DAMLE. Almost immediately after

DAMLE became aware that SCHLICKMAN was pregnant, DAMLE no longer allowed SCHLICKMAN to report directly to him, reassigning her to report directly to LOYELLA COUTTS. SCHLICKMAN believes this is the first instance of sex discrimination she experienced working for ANSER ADVISORY MANAGEMENT, LLC, formerly known as DHS CONSULTING, LLC.

15. **LOYELLA COUTTS**, according to her LinkedIn profile, was the Executive Human Resources Partner from February 2019 to April 2021. DAMLE and/or ANSER ADVISORY reassigned SCHLICKMAN to report directly to COUTTS. Given COUTTS was SCHLICKMAN's direct supervisor prior to SCHLICKMAN's leaves of absence, and would/should have remained so if ANSER ADVISORY had not wrongfully terminated SCHLICKMAN, on information and belief, SCHLICKMAN alleges COUTTS played a role in SCHLICKMAN's FEHA claims. Additionally, COUTTS approved SCHLICKMAN's timesheets. On information and belief COUTTS knew

16. **MARLENE HUMBERT** is ANSER ADVISORY's Senior VP of HR. In addition to being the messenger to SCHLICKMAN that ANSER was wrongfully terminating SCHLICKMAN's employment, HUMBERT failed to ensure ANSER ADVISORY MANAGEMENT, LLC paid SCHLICKMAN her final wages pursuant to Labor Code section 201.

17. **DOES 1-10**, on information and belief, are managing agents, co-conspirators, joint venturers, directors, officers and/or employees of ANSER ADVISORY, who acted within the course and scope of said agency, conspiracy, joint venture, and/or employment, with the actual or constructive knowledge and/or consent of ANSER ADVISORY. Plaintiff is ignorant to the true names and capacities of the Defendants sued herein as DOES 1 through 10, and therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities when they are ascertained. Plaintiff is informed and believes and thereon alleges that each fictitiously named Defendant is responsible in some manner for the occurrence(s) herein alleged, and Plaintiff's injuries and damages as herein alleged are directly, proximately and/or legally caused by Defendants. Plaintiff is informed and believes and thereon alleges that the aforementioned DOES are somehow responsible for the acts alleged herein as the agents, employers, representatives or employees of other named Defendant, and in doing the acts herein alleged were acting within the scope of their agency, employment or representative capacity of said named Defendants. The tortious acts and omissions alleged herein were performed by management level employees of Defendant. Defendant allowed and/or condoned a continuing pattern of violations of California's FEHA, Labor Code, and/or Business and Professions Code.

## EMPLOYER DEFINED FOR SCHLICKMAN'S LABOR CODE CLAIMS

18. California law specifies the elements necessary to define an employer. "To employ" has "three alternative definitions." *Martinez v. Combs* (2010) 49 Cal.4th 35, 64. "It means: (a) to exercise control over the wages, hours or working conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship." *Id*. The broad definition of an employer under the Industrial Wage Orders includes "any person as defined in Section 18 of the Labor Code[1], who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any [employee]." *Guerrero v. Superior Court* (2013) 213 Cal.App.4th 912, 947. A person or an entity that controls the business enterprise may be an employer even if it did not "directly hire, fire or supervise" the employees. *Id*. at 950. In this case, ANSER ADVISORY, LLC is the entity that controls ANSER ADVISORY MANAGEMENT, LLC, and was also SCHLICKMAN'S employer under *Guerrero*.

## ALTER EGO LIABILITY

19. ANSER ADVISORY is undoubtedly the alter ego or instrumentality of ANSER ADVISORY MANAGEMENT, LLC. Specifically, both entities share the same Chief Executive Officer (CEO) and/or Managing Member. Furthermore, ANSER ADVISORY, LLC and ANSER ADVISORY MANAGEMENT, LLC share the same principal place of business address of 2677 N. Main Street, Suite 400, Santa Ana, CA 92705. Given this shared facility, on information and belief, ANSER ADVISORY, LLC and ANSER ADVISORY MANAGEMENT, LLC use common employees. ANSER ADVISORY, LLC and ANSER ADVISORY MANAGEMENT, LLC not only have identical or similar boards or directors, but also identical or similar officers or managing agents as demonstrated by the entities respective Articles of Organization and/or Statement of Information filed with California's Secretary of State. Given this, on information and belief, there exists a "unity of interest and ownership" between ANSER ADVISORY, LLC and ANSER ADVISORY MANAGEMENT, LLC so that separate identities do not actually exist. Thus, "alter ego" liability is fair and just in this case. Moreover, this scenario meets the definition of employer under both *Martinez* and *Guerrero*. On information and belief, ANSER ADVISORY, LLC is an entity that controls the business enterprise of ANSER ADVISORY MANAGEMENT, LLC, and so too was SCHLICKMAN's employer (*Guerrero* at page 950).

---

[1] "Person" means any person, association, organization, partnership, business trust, limited liability company, or corporation. Lab. Code § 18.

## LABOR CODE SECTION 558.1 LIABILITY

20. Regardless of alter ego liability, under Labor Code section 558.1, " (a) Any employer or other person acting on behalf of an employer, who violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, Sections 203, 226, 226.7, 1193.6, 1194, or 2802, may be held liable as the employer for such violation. (b) For purposes of this section, the term "other person acting on behalf of an employer" is limited to a natural person who is an owner, director, officer, or managing agent of the employer, and the term "managing agent" has the same meaning as in subdivision (b) of Section 3294 of the Civil Code. (c) Nothing in this section shall be construed to limit the definition of employer under existing law." For certain Labor Code violations, "[i]n California, the Legislature has decided that both the employer and any "other person" who causes a violation of the overtime pay or minimum wage laws are subject to [liability]. …[This] statute [does not] mention the business structure of the employer, the benefits or protections of the corporate form, or any potential reason or basis for disregarding the corporate form. …[T]he business structure of the employer is irrelevant; if there is evidence and a finding that a party other than the employer "violates, or causes to be violated" the overtime laws…or "pays or causes to be paid to any employee" less than minimum wage…, then that party is liable… regardless of the identity or business structure of the employer." *Atempa v. Pedrazzani* (2018) 27 Cal. App. 5th 809 at 820. Thus, California Courts are willing to hold personally liable owners, directors, officers, managers, members, and managing agents who violate or cause to be violated certain Labor Code sections.

## VICARIOUS LIABILITY

21. SCHLICKMAN incorporates by reference all of the allegations set forth in the paragraphs above as though fully set forth herein.

22. Vicarious liability is a form of strict, secondary liability that arises under the common law doctrine of agency, Respondeat Superior, i.e. the responsibility of the superior for the acts of his/her/their/its subordinate or, in a broader sense, the responsibility of any third party that had the "right, ability or duty to control" the activities of a violator.

23. ANSER ADVISORY is vicariously liable for DOE Defendant(s)' actions, as well as the actions of any of its other managing agents, co-conspirators, joint venturers, directors, officers and/or employees of ANSER ADVISORY, who acted within the course and scope of said agency, conspiracy, joint

venture, and/or employment, with the actual or constructive knowledge and/or consent of ANSER ADVISORY. SCHLICKMAN is informed and believes that each Defendant authorized and/or ratified the wrongful activities of each of the remaining Defendants alleged within this Complaint. ANSER ADVISORY's conduct was undertaken by its director(s), officer(s), managing agent(s) and other persons responsible for supervision of employees and for the drafting and implementation of policies and other managerial decisions. The conduct of the officers, managing agents, and other individuals was on behalf of ANSER ADVISORY. Furthermore, ANSER ADVISORY had advance knowledge of such conduct of said individuals whose actions and conduct were authorized, approved, ratified, and/or actually or constructively known or performed by ANSER ADVISORY's director(s), officer(s), managing agent(s) and other persons responsible for supervision of employees and for the drafting and implementation of policies and other managerial decisions.

**FEHA ADMINISTRATIVE REMEDIES TIMELY EXHAUSTED FEBRUARY 8, 2022, WITH RIGHT TO SUE NOTICED ISSUED AUGUST 26, 2022**

24. SCHLICKMAN incorporates by reference all of the allegations set forth above as though fully set forth herein.

25. In order to bring a civil action alleging violations of the FEHA, a plaintiff must first exhaust administrative remedies by timely filing a claim with the appropriate government agency, after which the plaintiff receives a right-to-sue letter and can file suit by the applicable deadline. Cal. Gov't Code § 12965(b).

26. ANSER ADVISORY, formerly known as DHS CONSULTING, neither entered into the interactive process [Gov. Code § 12940(n)] with SCHLICKMAN from September 2, 2020 to any time prior to wrongfully terminating SCHLICKMAN on February 5, 2021, nor actually accommodated [Gov. Code § 12940(m)] her disability [Gov. Code § 12940(a)], her pregnancy or medical conditions related to pregnancy, and/or childbirth or medical conditions related to childbirth [Gov. Code §§ 12926(r)(1)(A) and/or (B); Gov. Code § 12940(a)]. Instead ANSER ADVISORY, formerly known as DHS CONSULTING, discriminated against SCHLICKMAN for such.

27. As of January 1, 2020, the time to file a charge with the DFEH/CRD for an alleged FEHA violation was extended to three years. Cal. Gov't Code § 12960.

28. On February 8, 2022, SCHLICKMAN timely filed a Complaint with California's Department of Fair Employment and Housing (DFEH) against Anser Advisory f.k.a. DHS Consulting for "Discrimination" based on "Disability (physical or mental); Sex/Gender; Pregnancy, child birth, breast

feeding and/or related medical conditions", including wrongful termination, specifically mentioning her need for accommodation to the DFEH/CRD.

29. The DFEH, now known as the Civil Rights Department (CRD), closed and then mailed by first class mail a Right to Sue notice dated August 26, 2022, notifying SCHLICKMAN that "…[a]s specified in Government Code section 12965, subdivision (b), [she] may file [her] own civil action asserting employment claims under the FEHA within one year of the date of this letter. …".

30. Thus, SCHLICKMAN timely exhausted administrative remedies and has the right to pursue her FEHA claims against ANSER ADVISORY fka DHS Consulting for her FEHA claims SCHLICKMAN experienced on or before February 5, 2021, covering her entire tenure with ANSER ADVISORY.

## SCHLICKMAN'S COMPLAINT FOR FEHA CLAIMS IS TIMELY FILED

31. On Friday, August 26, 2022, California's Civil Rights Department (CRD), formerly known as the Department of Fair Employment and Housing (DFEH), served by email an "attached courtesy copy of the Notice of Case Closure and Right to Sue letter" upon Schlickman through her attorney of record, and which the CRD also served that day "via First Class Mail".

32. According to the CRD's Notice of Case Closure and Right to Sue letter, "[a]s specified in Government Code section 12965, subdivision (b)…", Schlickman could file her "civil action asserting employment claims under the FEHA within one year of the date of this letter."

33. The statute of limitations to *file a lawsuit* alleging unlawful employment practices in violation of FEHA is the later of two dates: one year from the date DFEH/CRD issues a right to sue notice, or ninety days from the receipt of a right to sue letter from the EEOC. Cal. Gov't Code § 12965(b), (d)(2); 29 U.S.C. § 626; *Hall v. Goodwill Indus. of S. Cal.*, (2011) 193 Cal.App.4th 718, 730.

34. According to a Gregorian calendar, one year from Friday, August 26, 2022 was Saturday, August 26, 2023. Because the anniversary date of the CRD's Notice of Case Closure and Right to Sue letter fell on a Saturday, California's Code of Civil Procedure (C.C.P.) sections 10[1] and subsections (a) and (b) of section 12a[2], govern the deadline by which Schlickman must have filed her Complaint containing FEHA claims.

---

[1] "**Holidays within the meaning of this code are every Sunday** and any other days that are specified or provided for as judicial holidays in Section 135." C.C.P. § 10.

[2] "(a) If the last day for the performance of any act provided or required by law to be performed within a specified period of time is a holiday, then that period is hereby extended to and including the next day that is not a holiday. For purposes of this section, "holiday" means all day on Saturdays, all holidays specified in Section 135 and, to the extent provided in Section 12b, all days that by terms of Section 12b are required to be considered as holidays. (b) **This section applies to** Sections 659, 659a, and 921, and to **all** other **provisions of law providing or requiring an act to be performed** on a particular day or **within a specified period of time, whether expressed in this or any other code or statute, ordinance, rule, or regulation**." C.C.P. § 12a.

35. C.C.P. section 12a, reads in relevant part "(a) [i]f the last day for the performance of any act provided or required by law to be performed within a specified period of time is a holiday, then that period is hereby extended to and including the next day that is not a holiday." The word "holiday" means "all day on Saturdays" (C.C.P. § 12a(a)) and "every Sunday" (C.C.P. § 10).

36. This rule governing how to calculate the actual statute of limitations, not just for Schlickman's FEHA lawsuit, applies to "all provisions of law providing or requiring an act to be performed on a particular day or within a specified period of time, whether expressed in [California's C.C.P.] or any other code or statute, ordinance, rule, or regulation." C.C.P. § 12a(b). This includes lawsuits containing FEHA claims, which are statutory causes of action.

37. Thus, the last day for Schlickman to have timely filed FEHA claims in a civil action is/was Monday, August 28, 2023 due to the application of C.C.P. sections 10 and 12a.

38. According to the Register of Actions (ROA) for this case, Schlickman timely filed her Complaint on Monday, August 28, 2023.

39. Therefore, Schlickman's Complaint including FEHA claims was filed timely.

40. Finally, though unpublished, the following case is informative: *Williams v. North Orange County Community College Dist.* (April 27, 2022) No. G059946 Court of Appeals of California, Fourth District, Division Three. In this unpublished case that appealed a judgment of the Superior Court of Orange County, Super. Ct. No. 30-2019-01053438, the plaintiff in that case, Plaintiff Williams, "filed an administrative complaint with the DFEH and, upon Williams's request, the DFEH issued him a June 29, 2018 right-to-sue notice that accurately stated Williams had one year from then to timely file a lawsuit for causes of action under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; FEHA). Because the anniversary date fell on a Saturday, the last day for Williams to file FEHA claims in a lawsuit was effectively Monday July 1, 2019 (the FEHA lawsuit deadline). (Code Civ. Proc., §§ 10, 12a.).

## JUDICIAL COUNCIL EMERGENCY RULE 9 APPLIES TO SCHLICKMAN'S LABOR CODE AND BUSINESS & PROFESSIONS CODE ALLEGATIONS

41. SCHLICKMAN incorporates by reference all of the allegations set forth above as though fully set forth herein.

42. Under Judicial Council's Emergency Rule 9, statutes of limitation were tolled from April 6, 2020 to October 1, 2020 due to the Covid-19 pandemic, stating in relevant part, "Notwithstanding any other law, the statutes of limitations and repose for civil causes of action that exceed 180 days are tolled

from April 6, 2020, until October 37 1, 2020. (Subd (a) amended effective May 29, 2020.)

43. According to the Advisory Committee Comment to Emergency Rule 9, Emergency Rule 9 "is intended to apply broadly to toll any statute of limitations on the filing of a pleading in court asserting a civil cause of action. The term "civil causes of action" includes special proceedings. (See Code Civ. Proc., §§ 312, 363 ["action," as used in title 2 of the code (Of the Time of Commencing Civil Actions), is construed "as including a special proceeding of a civil nature"); special proceedings of a civil nature include all proceedings in title 3 of the code, including mandamus actions under §§ 1085, 1088.5, and 1094.5—all the types of petitions for writ made for California Environmental Quality Act (CEQA) and land use challenges]; see also Pub. Resources Code, § 21167(a)–(e) [setting limitations periods for civil "action[s]" under CEQA].) **The rule also applies to statutes of limitations on filing of causes of action in court found in codes other than the Code of Civil Procedure,** including the limitations on causes of action found in, for example, the Family Code and Probate Code."

44. Thus, Emergency Rule 9 applies to SCHLICKMAN's Labor Code and Business & Professions Code allegations.

### FACTUAL ALLEGATIONS COMMON TO PLAINTIFF'S CLAIMS

45. SCHLICKMAN incorporates by reference all of the allegations set forth above as though fully set forth herein.

46. On February 5, 2019, DHS CONSULTING, INC. hired SCHLICKMAN as a full-time, non-exempt Administrative Manager at a pay rate of $28.85 per hour [$1,154.00 per week], payable on a bi-weekly basis.

47. SCHLICKMAN's first day of work was March 4, 2019. Originally, SCHLICKMAN directly reported to DHS CONSULTING's President, SUDIR DAMLE, at 1820 E. 1st Street, Suite 410, Santa Ana, CA 92701 when DHS CONSULTING, INC. was located at that address. However, this changed when DAMLE became aware that SCHLICKMAN was pregnant. Almost immediately after DAMLE became aware of SCHLICKMAN's pregnancy, DHS CONSULTING, INC. no longer allowed SCHLICKMAN to report directly to DAMLE. SCHLICKMAN was reassigned to then report directly to LOYELLA COUTTS who, according to her LinkedIn profile, was the Executive Human Resources Partner from February 2019 to April 2021. Evidently, SCHLICKMAN'S timesheets reflect this direct report change. SCHLICKMAN believes this is the first instance of sex/gender/pregnancy discrimination she experienced working for DHS Consulting, LLC.

48. DHS Consulting, Inc. was converted on May 17, 2019 to DHS Consulting, LLC, a Limited

Liability Company formed in California and owned by manager/member DAMLE.

49. On information and belief, around or on June 19, 2019, ANSER ADVISORY announced its acquisition of DHS CONSULTING, LLC. *See* https://www.businesswire.com/news/home/20190619005681/en/Anser-Advisory-Announces-DHS-Consulting-Acquisition-Expanding-Market-Expertise. According to this announcement, "Mr. Damle will become President of Anser Advisory, working directly with Chief Executive Officer, Bryan Carruthers. Additionally, Gary Cooley and Melanie Estes of DHS will join Anser as Chief Operating Officer and Chief Delivery Officer, respectively." On December 6, 2019, DHS CONSULTING, LLC amended its name to ANSER ADVISORY MANAGEMENT, LLC through a document titled "Secretary of State Amendment to Articles of Organization of a Limited Liability Company (LLC)" that was signed by "Bryan Carruthers, President of Anser Advisory, LLC, Sole Member".

50. ANSER ADVISORY, LLC is the Manager or Member of ANSER ADVISORY MANAGEMENT, LLC according to ANSER ADVISORY MANAGEMENT, LLC's Statement Of Information filed April 26, 2023 and signed by Co-Defendant GARY COOLEY. Both ANSER ADVISORY, LLC and ANSER ADVISORY MANAGEMENT, LLC share the same principal business address of 2677 N. Main Street, Suite 400, Santa Ana, CA 92705.

51. From March 4, 2019 to October 11, 2019, even though ANSER ADVISORY MANAGEMENT, LLC's "Employee Labor Detail" Excel Spreadsheet demonstrates SCHLICKMAN worked over 8 hours on several workdays, including but not limited to September 11th, 17th, 18th, 19th, 25th, 26th, 27th—it is clear from SCHLICKMAN'S timesheet and pay records that DHS CONSULTING, LLC/ANSER ADVISORY MANAGEMENT, LLC failed to pay SCHLICKMAN overtime wages for working over 8 hours in workday and/or 40 hours in a workweek. Instead, according to SCHLICKMAN, DHS CONSULTING, LLC/ANSER ADVISORY MANAGEMENT, LLC averaged SCHLICKMAN's time.

52. Additionally, sometime between March 4, 2019 to October 11, 2019, SCHLICKMAN complained in a DHS CONSULTING, LLC/ANSER ADVISORY MANAGEMENT, LLC about sick leave. It is clear from SCHLICKMAN's pay records that DHS CONSULTING, LLC/ANSER ADVISORY MANAGEMENT, LLC failed to provide SCHLICKMAN with sick leave hours per California's Labor Code.

53. DHS CONSULTING, LLC/ANSER ADVISORY MANAGEMENT, LLC also failed to reimburse SCHLICKMAN for the business miles she drove using her personal vehicle, for example when she picked up lunch for the office or dropped of mail.

54. Fast forward, SCHLICKMAN unfortunately experienced complications with her pregnancy. Due to such, SCHLICKMAN asserted her right to take Pregnancy Disability Leave (PDL), which can last up to approximately four months (the working days the employee normally would work in one-third of a year or 17 1/3 weeks). SCHLICKMAN had a right to be return her same job when she was no longer disabled by her pregnancy or, in certain instances, to a comparable job.

55. According to a DHS CONSULTING, INC. Leave Of Absence Request Form, on October 14, 2019, SCHLICKMAN started approved Pregnancy Disability Leave that was protected under the Family Medical Leave Act (FMLA) even though she desired to take only PDL.

56. On December 27, 2019 at 2:57 pm, Karynna Ferreira, Anser Advisory's HR Business Partner emailed SCHLICKMAN to inform her of the following: "Family Medical Leave Act (FMLA) entitlement of 12 weeks will be exhausted as of January 3, 2020 and [her] Pregnancy Disability Leave entitlement of four months will be exhausted as of January 31, 2020. As such, [Anser Advisory] would expect [SCHLICKMAN] to return to work on Monday, February 3, 2020. However, [Anser Advisory]…received [her] request for one additional week of unpaid leave and [her] physicians statement (dated 12/10/2019). The company recognizes that situations may arise where an employee, who is not eligible for leave under FMLA, will be unable to perform duties due to medical conditions. Therefore, your request for one additional week of non FMLA leave has been approved. Please note that this is an unpaid leave of absence and you continue to be responsible for remitting any and all benefit premiums during your leave. We expect that you will return to work on Monday, February 10, 2020. We look forward to your return!"

57. At 3:15 pm on December 27, 2019, SCHLICKMAN responded to Ms. Ferreira as follows: "Per our phone conversation I wanted to outline what leave and disability has been utilized so far. I utilized two weeks of PDL-pre delivery and six weeks of PDL post delivery. My GP MD has extended my PDL/Disability due to nerve damage sustained during labor until February 10, 2020. I have yet to use any of the unpaid twelve weeks of FMLA and or any of my six weeks of PFL (paid family leave). I am awaiting scheduling for an appointment per my MD to neurology which should be after the New Year. Please let me know if there is anything else you need from me in regards to this. Thanks so much for your help" and added at 4:21 pm "I forgot to add on my previous email that my PFL- paid family leave is usable up to one year after her birth."

58. On December 31, 2019 at 12:20 pm, Ms. Ferreira sent SCHLICKMAN a responsive email, writing, "Leaves of absence can be very confusing! But if I may, I would like to share with you that

FMLA and PDL run concurrently and will expire as of the dates specified in the email below. Paid Family Leave (PFL) is a benefit for compensation through the state of California and does not provide any job related protection. You do, however, have 12 weeks of California Family Rights Act (CFRA) that you are entitled to use at any time before the baby's first birthday, but after you've been medically released from disability." At 12:54 pm, SCHLICKMAN emailed Ms. Ferreira as follows: "If I may, I have spoken to EDD and the information I have been given is that PDL/disability and FMLA are different and do not run concurrently. I was also informed of this by Loyella prior to her departure. I was also informed by EDD that my disability was approved to be extended until 2.10.20 and that I would not be penalized as such, along with my return to work as long as I was cleared medically to do so. As previously stated I am awaiting appointments with neurology for damage sustained prior to returning to work. They will be working closely with my MD on this. I'd also like to be clear that my using my PFL would jeopardize my employment? This wasn't mentioned at any point in numerous conversations with Loyella. If you could/would clarify what CFRA is and how that works I would appreciate it. I appreciate your assistance with this matter as it is confusing and it is becoming clear that procedures weren't properly articulated prior to my delivery." At 1:04 pm, Ms. Ferreira recommended a conference call between them on January 6, 2020 "[i]n efforts to try and get some clarity on this topic…".

59. On February 3, 2020, SCHLICKMAN's neurologist extended her disability leave by 6 months, and provided this documentation to ANSER ADVISORY's Human Resources.

60. Given SCHLICKMAN's leave of absence, in February 2020, her employer required she apply to an assisting recruiting position which she was qualified to do because SCHLICKMAN had worked in recruiting prior to maternity leave. SCHLICKMAN informed her employer of her intent to return to work, including notifying her employer of the end date of her disability leave, which at that point was June 2020. SCHLICKMAN was allegedly passed over for "someone with just a little more experience" than she had according to **Marlene Humber**, Senior Vice President of Human Resources at Anser Advisory.

61. In September 2020, SCHLICKMAN notified ANSER ADVISORY of her need for disability accommodation, specifically work restrictions prescribed by her physician. ANSER ADVISORY failed to respond in any meaningful manner, including failed to timely enter into the interactive process with SCHLICKMAN from September 2020 up to the day prior to February 5, 2021 when ANSER ADVISORY wrongfully terminated Schlickman. SCHLICKMAN simply did not hear back from ANSER ADVISORY's HR regarding accommodating SCHLICKMAN's work restrictions ANSER

ADVISORY requested of SCHLICKMAN in September 2020.

62. Because SCHLICKMAN had not received a response from anyone else in HR, on or about December 3, 2020, SCHLICKMAN called Ms. Humbert to inquire about returning to work to her position and a date to do so. Ms. Humbert informed SCHLICKMAN that with the consolidation of both companies (DHS CONSULTING and ANSER ADVISORY) into one that the administrative side of the company was allegedly completely covered and the position SCHLICKMAN previously held was "dissolved". Ms. Humbert then stated "they'd love to have [SCHLICKMAN] return to work a position [ANSER ADVISORY] would have to locate for her. SCHLICKMAN informed Ms. Humbert that she was unaware of the consolidation and when her position had been eliminated.

63. What Ms. Humbert failed to mention to SCHLICKMAN is that ANSER ADVISORY offered SCHLICKMAN's Administrative Manager position to Rose Muniz, the temporary employee SCHLICKMAN trained prior to starting her PDL. According to Rose Muniz's LinkedIn profile, Ms. Muniz has been ANSER ADVISORY's Administrative Manager since October 2019 to present.

64. Ms. Humbert then informed SCHLICKMAN that with the end of the year approaching and certain deadlines that needed to be met, Ms. Humbert could give this issue her undivided attention later and that if SCHLICKMAN could give Ms. Humbert until the top of the year when they would regroup and go over options. SCHLICKMAN informed Ms. Humbert that she understood and would speak with Ms. Humbert after the New Year.

65. On January 14, 2021, Ms. Humbert and SCHLICKMAN spoke. Their conversation involved ANSER ADVISORY's wrongful termination of SCHLICKMAN, offering SCHLICKMAN a severance of 1 week in exchange for a general and specific release of any and all claims, and SCHLICKMAN requesting an employment verification letter SCHLICKMAN needed to provide realtor Darvin Thompson. Later that day, at 5:37 PST, Ms. Humbert emailed SCHLICKMAN an employment verification letter stating the following in relevant part: "This letter serves to verify employment for Cara Schlickman. Cara has been employed with Anser Advisory since March 04, 2019 as an Administrative Manager. Her annual salary is $60,008.00 and she is an employee in good standing." Yet SCHLICKMAN had not actually worked and been paid by ANSER ADVISOR for a day's work since her pregnancy disability leave starting October 14, 2019. On January 14, 2021, Marlene Humbert, Senior VP of Human Resources for Anser Advisory Management, LLC, emailed to Ms. Schlickman an employment verification letter stating, "This letter serves to verify employment for Cara Schlickman. Cara has been employed with Anser Advisory since March 04, 2019 as an Administrative Manager. Her

annual salary is $60,008.00 and she is an employee in good standing. Should you need additional information regarding Cara's employment with Anser Advisory, do not hesitate to contact me directly at (602) 517-8418." Despite this positive employment verification letter, DEFENDANTS wrongfully terminated Ms. Schlickman, effective February 5, 2021

66.  Instead of accommodating and reinstating SCHLICKMAN, instead, on January 20, 2021 at 6:05 pm PST, Ms. Humbert sent SCHLICKMAN the following email: "Hello Cara – I hope all is well with you and your family.  Just wanted to verify that you received the employment verification letter that I sent to you?  Also, I have the severance agreement that we discussed ready to send to you.  I wanted to make sure you received the first letter before I sent the agreement over."

67. On January 21, 2021 at 11:57 am, Ms. Humbert actually emailed SCHLICKMAN the aforementioned severance agreement.

68. On February 1, 2021 at 1:15 pm, Ms. Humbert sent SCHLICKMAN a follow up email stating, "Hello Cara – I wanted to touch base with you to see if you had any questions on the severance agreement.  If you still want to move forward with the termination on February 5th, please contact me at your earliest convenience so that we can coordinate.  Thank you". But SCHLICKMAN did not want to be terminated. SCHLICKMAN could have lawfully quit if she desired to separate from employment with ANSER ADVISORY. Emotionally distressed over being terminated after not being accommodated and enduring an unnecessary delay creating false hope within SCHLICKMAN from December 2020 to mid-January 2021, SCHLICKMAN had yet to respond to Ms. Humbert.

69. Thus, on February 3, 2021 at 10:57 am PST, Ms. Humbert sent SCHLICKMAN an email stating, "Hello Cara – I have been trying to reach your [sic] regarding your employment status with Anser Advisory.  In addition to these 2 emails, I left you a voice mail message on both Monday, February 1st, 2021 and Tuesday, February 2nd, 2021.  Please give me a call at the number listed below or reply to your email.  Thank you."

70. On February 4, 2021, Ms. Humbert emailed SCHLICKMAN as follows: "Cara – my understanding is that you were in the process of moving residences.  I need to verify your current home address so that we can ship your separation payment to you, as we previously discussed."

71. On February 23, 2021, a male working for ANSER ADVISORY named Antonio called SCHLICKMAN and left her a voice message.

72. On March 26, 2021 at 11:26 am, SCHLICKMAN, who had been suffering emotionally and financial since ANSER ADVISORY failed to accommodate her and then terminated her, emailed Ms.

Humbert, acknowledging and questioning Antonio's email, stating "Good afternoon Marleen, I received a phone call from Antonio from Anser Advisory on February 23, 2021. I apologize for the delay in checking my messages; I do not answer numbers I don't recognize.  I am unaware as to what this phone call regards. If you can, I'd appreciate you providing me with clarification. Please refer to the attached screen shot of the voicemail as well as the actual voicemail attachment."

73. In response, on March 26, 2021 at 11:35 am, Ms. Humbert emailed SCHLICKMAN, writing "Hello Cara – I hope all is well with you and your family!  Thank you for reaching out to me regarding this.  Antonio is our Payroll Manager and he was reaching out to you to make sure we had your current home address.  You had mentioned that you were in the process of getting a new home, and as we were processing the separation payment for you we wanted to make sure it did not get lost in the mail.  Can you please confirm that you did receive that check as we had discussed? Also, we assumed that you were not interested in receiving the additional severance payment because you did not return the signed agreement, however, if that is not correct, please let me know.  The additional severance payment you would be eligible for is another $2500.00.  Thank you!"

74. Despite Ms. Humbert's written words, ANSER ADVISORY mailed a check for $2,500.08 gross that deceptively looked like a regular paycheck, and could easily make a payee believe the check is a payroll check instead of a severance payment because nowhere on the ADP "earning statement" or the $1,733.02 net check does it reflect a severance payment. On information and belief, SCHLICKMAN asserts ANSER ADVISORY maliciously, oppressively, or fraudulently attempted to dupe her into depositing this check and thus forego her lawful rights against ANSER ADVISORY via part performance.

75. Believing the check was a payroll check but confused by such, on April 14, 2021, SCHLICKMAN responded to Ms. Humbert as follows: "Hello Marlene, I did receive the check in the mail. I was wondering if you could clarify what the check is for as I didn't work for DHS and or Anser during the month of February. Thank you for this clarification."

76. On April 15, 2021 at 10:22 am, Ms. Humbert responded via an email, stating "Certainly Cara – that information was outlined in the agreement that was sent to you on January 21, 2021.  Please verify that you received the agreement that was sent to you."

77. On April 15, 2021 at 10:28 am, SCHLICKMAN sought additional clarification from Ms. Humbert via email, writing "Marlene, I appreciate your response are you referencing the FedEx package that was sent to me? I was under impression that this was only in relation the severance agreement. If

you be so kind to explain what the separately mailed is in reference to I would greatly appreciate it."

78. On April 15, 2021 at 10:41 am, Ms. Humbert responded as follows: "Hello Cara – I thought it might be easier to just resend the original agreement that was sent to you on January 21, 2021 via email. On page 1 of the agreement, you will see a reference to the Separation Payment which is the payment that was made to you earlier this year. Please let me know if you have any additional questions. Happy to help!"

79. SCHLICKMAN, still in need of clarification, emailed Ms. Humbert on April 15, 2021 at 3:10 pm, stating "Hello Marlene, I did receive and l had the opportunity to read the packet. Could you please do me a favor and send over a copy of the separation pay policy?"

80. On April 15, 2021 at 3:50 pm, Ms. Humbert wrote SCHLICKMAN, stating "Hello Cara, I'm not sure what you're asking for. We've provided the severance agreement which relates to the separation pay."

81. On April 22, 2021 at 1:06 pm, SCHLICKMAN, feeling nearly tricked, emailed Ms. Humbert and unequivocally reminded ANSER ADVISORY and Ms. Humbert that she does not accept the severance agreement as follows: "Good Afternoon Marlene, I'm writing to inform you I will not be cashing the separation check payment as I have not agreed to, nor have I signed the severance agreement. If you have any further questions in regard to this matter please feel free to contact me."

82. It is clear that SCHLICKMAN was able to return to work for ANSER ADVIORY in September 2020. However, ANSER ADVISORY did not pay SCHLICKMAN her final check until February 2021 or shortly thereafter. Therefore, ANSER ADVISORY's payment of SCHLICKMAN's final wages are untimely.

## LIST OF ALL CAUSES OF ACTION

**Government Code Violations:**

1. Discrimination Based On Disability [Gov. Code § 12940(a)];

2. Discrimination Based On Sex, Gender, Pregnancy Or Medical Conditions Related To Pregnancy, And/Or Childbirth Or Medical Conditions Related To Childbirth [Gov. Code §§ 12926(r)(1)(A) and/or (B); Gov. Code § 12940(a)];

3. Failure To Accommodate [Gov't Code § 12940(m)];

4. Failure To Engage In A Timely, Good Faith, Interactive Process To Determine Effective Reasonable Accommodations [Gov. Code § 12940(n)];

5.  Unlawful Employment Practices Concerning Pregnancy, Childbirth, Related Medical Condition [Gov. Code § 12945];

6.  Wrongful Termination In Violation Of Public Policy, Specifically California's FEHA);

**Labor Code Violations:**

1.  Failure To Pay Minimum Wages, Interest Thereon, Reasonable Attorney's Fees, And Costs Of Suit [Lab. Code §§ 558.1, 1194, 1197, 1197.1(a)(3)];

2.  Liquidated Damages In An Amount Equal To The Minimum Wages Unlawfully Unpaid And Interest Thereon [Lab. Code § 1194.2];

3.  Failure To Pay Sick Leave [Lab. Code § 246];

4.  Failure To Pay Overtime Wages, Interest Thereon, Reasonable Attorney's Fees, And Costs Of Suit [Lab. Code §§ 510, 558.1, and 1194];

5.  Missed, Interrupted, On-Call And/Or Untimely Meal Periods (Lab. Code §§ 226.7(b) & (c), 512, and 558.1);

6.  Missed, Interrupted, On-Call And/Or Untimely Rest Breaks [Lab. Code §§ 226.7 and 558.1];

7.  Lab. Code § 203 Waiting Time Penalties For Willful Violation Of Lab. Code § 201 [Lab. Code § 558.1];

8.  Failure To Reimburse All Necessary Business Expenses [Lab. Code §§ 558.1 and 2802];

**Business & Professions Code Violations**

9.  Unfair Business Practices [B & P Code § 17200 et. seq.]; and

10. Unfair Competition [B & P Code § 17200 et. seq.].

<u>**FIRST CAUSE OF ACTION**</u>

**DISABILITY DISCRIMINATION**

**[Gov. Code § 12940(a)]**

**(Against ANSER ADVISORY and DOES 1-50)**

83.  SCHLICKMAN repeats and re-alleges the allegations set forth above, and incorporates same by reference as though fully set forth herein.

84.  ANSER ADVISORY is an "employer" within the meaning of and is subject to FEHA as an employer of five (5) or more employees. Cal. Gov. Code § 12926(d).

85.  At all relevant times herein, SCHLICKMAN was an individual employed by ANSER ADVISORY or DHS CONSULTING which ANSER ADVISORY acquired.

86.  Government Code section 12940(a) provides that it is an unlawful employment practice

"[f]or an employer, because of the . . . physical disability . . . of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

87.     The California Fair Employment and Housing Act ("FEHA") defines "disability" to include (1) "[h]aving a record or history of a disease, disorder, condition, cosmetic disfigurement, anatomical loss, or health impairment [that constitutes a physical disability], which is known to the employer"; (2) "[b]eing regarded or treated by the employer … as having, or having had, any physical condition that makes achievement of a major life activity difficult"; or (3) "[b]eing regarded or treated by the employer … as having, or having had, a disease, disorder, condition, cosmetic disfigurement, anatomical loss, or health impairment that has no present disabling effect but may become a physical disability." Cal. Gov. Code § 12926, subd. (k)(3)–(5). Under "regarded as" theory, an actual or existing disability is not necessary. *Gelfo v. Lockheed Martin Corp*., 140 Cal. App. 4th 34, 52-53 (2006). SCHLICKMAN alleges that she was discriminated against on the basis of her actual disability, as well as on the basis of having been regarded as disabled.

88.     During her employment with ANSER ADVISORY, SCHLICKMAN suffered from an actual pregnancy-related physical disability which limited the major life activity of working, among other things. ANSER ADVISORY knew that SCHLICKMAN suffered from the disability because SCHLICKMAN informed ANSER ADVISORY Human Resources about it and provided relevant doctor's notes for time off for her disability.

89.     Alternatively, SCHLICKMAN believes she was being "regarded" by ANSER ADVISORY as having or having had a physical disability. Cal. Gov. Code §12926(k)(5). ANSER ADVISORY regarded SCHLICKMAN as having a physical disability.

90.     SCHLICKMAN was at all relevant times qualified for her position and able to perform the essential functions of her job with reasonable accommodation for her disability. Yet during her employment, SCHLICKMAN was treated less favorably than similarly situated non-disabled employees because of her disability and/or perceived disability.

91.     ANSER ADVISORY discriminated against SCHLICKMAN on the basis of her disability or perceived disability by taking adverse employment actions against SCHLICKMAN including but not limited to failing to accommodate her work restrictions from September 2020 to ultimately terminating her employment. SCHLICKMAN's actual or perceived disability was a substantial motivating reason for all

adverse employment actions taken against SCHLICKMAN.

92. The above-stated acts and omissions of ANSER ADVISORY, as alleged throughout this Complaint, constituted disability discrimination in violation of public policy and in violation of California Government Code §§ 12940, et seq.

93. As a direct, foreseeable, and proximate result of ANSER ADVISORY' conduct, as alleged above, SCHLICKMAN has suffered lost income, employment, and career opportunities, and has suffered and continues to suffer other economic loss, the precise amount of which will be proven at trial, but not less than $60,008 annually, the amount she would have earned working for ANSER ADVISORY had ANSER ADVISORY not wrongfully terminated her.

94. As further direct and legal result of the acts and conduct of ANSER ADVISORY, as aforesaid, SCHLICKMAN has been caused to and did suffer and continues to suffer pain, anxiety, depression, embarrassment, anger, loss of enjoyment of life, fright, nervousness, grief, worry, shock, humiliation, mortification, indignity, apprehension, ordeal, inconvenience, and emotional and mental distress, the precise amount of which will be proven at trial, but in an amount not less than her annual rate.

95. ANSER ADVISORY's conduct was a substantial factor in causing the aforementioned harm.

96. The above-recited actions of ANSER ADVISORY were done with malice, fraud, and/or oppression, and in conscious, despicable and reckless disregard of SCHLICKMAN's rights under FEHA. Additionally, such conduct was carried out against SCHLICKMAN in a willful manner and in conscious disregard of her civil rights. SCHLICKMAN is entitled to and seeks punitive damages against each Defendant, including but not limited ANSER ADVISORY, herein in an amount according to proof, but at a minimum of $600,080. The aforementioned conduct on which punitive damages is alleged, was done with the advance knowledge by an officer, director and/or managing agent of ANSER ADVISORY and Does 1 through 50's, inclusive. The alleged conduct on which punitive damages is alleged, was authorized, ratified and/or committed by an officer, director, and/or managing agent of ANSER ADVISORY and DOES 1 through 50's, inclusive.

97. Under the FEHA, SCHLICKMAN is also entitled to an award of reasonable attorney's fees and costs.

## SECOND CAUSES OF ACTION
### SEX/PREGNANCY DISCRIMINATION
**[Violation of Government Code §12940(a)]**

**(Against ANSER ADVISORY and DOES 1-50)**

98. SCHLICKMAN repeats and re-alleges the allegations set forth above, and incorporates same by reference as though fully set forth herein.

99. ANSER ADVISORY is an "employer" within the meaning of and is subject to FEHA as an employer of five (5) or more employees.  Cal. Gov. Code § 12926(d).

100. At all relevant times herein, SCHLICKMAN was an individual employed by ANSER ADVISORY.

101. At all relevant times mentioned herein, California Government Code §12940(a) was in full force and effect and binding on ANSER ADVISORY. Cal. Govt. Code §12940(a) prohibits an employer from taking an adverse employment action against a protected individual based on his or her sex. Adverse employment actions include, without limitation, discharging from employment, subjecting to disparate treatment, and discrimination, terms and conditions or privileges of employment. "Sex" includes, but is not limited to pregnancy, childbirth or related medical conditions. Cal. Govt. Code §12926.

102. Government Code section 12940(a) provides that it is an unlawful employment practice "[f]or an employer, because of the . . . gender . . . of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

103. At all relevant times herein, ANSER ADVISORY had a practice of failing to treat SCHLICKMAN in an equitable fashion and thereby wrongfully discriminated against SCHLICKMAN. As set forth fully hereinabove, SCHLICKMAN was discriminated against on the basis of her sex and pregnancy in the form of unfair terms, conditions, and privileges of employment.

104. ANSER ADVISORY discriminated against SCHLICKMAN on the basis of her sex/pregnancy by taking adverse employment actions against SCHLICKMAN including but not limited to failing to accommodate her medical condition as result of pregnancy complications and ultimately terminating her employment. SCHLICKMAN's sex/pregnancy and gender was a substantial motivating factor for all adverse employment actions taken against SCHLICKMAN.

105. SCHLICKMAN is informed and believes, and thereon alleges that her sex/pregnancy were a substantial factor contributing to ANSER ADVISORY's discriminatory treatment of her with respect to the terms, conditions, and privileges of employment, including but not limited to unfair treatment, adverse employment action, and wrongful termination as set forth herein.

106.    Because SCHLICKMAN's sex/pregnancy were a substantial factor contributing to the conduct of ANSER ADVISORY and their agents, the above-described acts of ANSER ADVISORY constitute unlawful employment practices in violation of Government Code §12940(a).

107.    As a direct, foreseeable, and proximate result of ANSER ADVISORY' conduct, as alleged above, SCHLICKMAN has suffered lost income, employment, and career opportunities, and has suffered and continues to suffer other economic losses, the precise amount of which will be proven at trial.

108.    As further direct and legal result of the acts and conduct of ANSER ADVISORY, as aforesaid, SCHLICKMAN has been caused to and did suffer and continues to suffer pain, anxiety, depression, embarrassment, anger, loss of enjoyment of life, fright, nervousness, grief, worry, shock, humiliation, mortification, indignity, apprehension, ordeal, inconvenience, and emotional and mental distress, the precise amount of which will be proven at trial.

109.    ANSER ADVISORY' conduct was a substantial factor in causing the aforementioned harm.

110.    The above-recited actions of ANSER ADVISORY were done with malice, fraud, and/or oppression, and in conscious, despicable and reckless disregard of SCHLICKMAN's rights under FEHA. In addition, such conduct was carried out against SCHLICKMAN in a willful manner and in conscious disregard of her rights.  SCHLICKMAN is entitled to and seeks punitive damages against ANSER ADVISORY herein in an amount according to proof.  The aforementioned conduct on which punitive damages is alleged, was done with the advance knowledge by an officer, director and/or managing agent of ANSER ADVISORY.  The alleged conduct on which punitive damages is alleged, was authorized, ratified and/or committed by an officer, director, and/or managing agent of ANSER ADVISORY.

111.    Under FEHA, SCHLICKMAN is entitled to an award of reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION

### Failure To Accommodate [Gov't Code § 12940(m)]

### (Against ANSER ADVISORY and DOES 1-50)

112.    "It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California: For an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee. …(2) For an employer or other entity covered by this part to, in addition to the employee protections

provided pursuant to subdivision (h), retaliate or otherwise discriminate against a person for requesting accommodation under this subdivision, regardless of whether the request was granted."

113.    As mentioned in the factual allegations above, ANSER ADVISORY failed to abide by Gov't Code section 12940(m).

### FOURTH CAUSE OF ACTION

### Failure To Accommodate [Gov't Code § 12940(n)]

### (Against ANSER ADVISORY and DOES 1-50)

114.    "It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California: For an employer or other entity covered by this part to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition."

115.    As mentioned in the factual allegations above, ANSER ADVISORY failed to abide by Gov't Code section 12940(n).

### FIFTH CAUSE OF ACTION

### Unlawful Employment Practices Concerning Pregnancy, Childbirth, Related Medical Condition

### [Gov. Code § 12945]

### (Against ANSER ADVISORY and DOES 1-50)

116.    "(a) In addition to the provisions that govern pregnancy, childbirth, or a related medical condition in Sections 12926 and 12940, each of the following shall be an unlawful employment practice, unless based upon a bona fide occupational qualification: (1) For an employer to refuse to allow an employee disabled by pregnancy, childbirth, or a related medical condition to take a leave for a reasonable period of time not to exceed four months and thereafter return to work, as set forth in the council's regulations. The employee shall be entitled to utilize any accrued vacation leave during this period of time. Reasonable period of time means that period during which the employee is disabled on account of pregnancy, childbirth, or a related medical condition. An employer may require an employee who plans to take a leave pursuant to this subdivision to give the employer reasonable notice of the date the leave shall commence and the estimated duration of the leave. (2)(A)For an employer to refuse to

maintain and pay for coverage for an eligible employee who takes leave pursuant to paragraph (1) under a group health plan, as defined in Section 5000(b)(1) of the Internal Revenue Code of 1986, for the duration of the leave, not to exceed four months over the course of a 12-month period, commencing on the date the leave taken under paragraph (1) begins, at the level and under the conditions that coverage would have been provided if the employee had continued in employment continuously for the duration of the leave. Nothing in this paragraph shall preclude an employer from maintaining and paying for coverage under a group health plan beyond four months. An employer may recover from the employee the premium that the employer paid as required under this subdivision for maintaining coverage for the employee under the group health plan if both of the following conditions occur:**(i)**The employee fails to return from leave after the period of leave to which the employee is entitled has expired.**(ii)**The employee's failure to return from leave is for a reason other than one of the following:**(I)**The employee taking leave under the Moore-Brown-Roberti Family Rights Act (Sections 12945.2 and 19702.3 of the Government Code).**(II)**The continuation, recurrence, or onset of a health condition that entitles the employee to leave under paragraph (1) or other circumstance beyond the control of the employee.**(B)**If the employer is a state agency, the collective bargaining agreement shall govern with respect to the continued receipt by an eligible employee of the health care coverage specified in subparagraph (A).**(3)(A)**For an employer to refuse to provide reasonable accommodation for an employee for a condition related to pregnancy, childbirth, or a related medical condition, if the employee so requests, with the advice of the employee's health care provider.**(B)**For an employer who has a policy, practice, or collective bargaining agreement requiring or authorizing the transfer of temporarily disabled employees to less strenuous or hazardous positions for the duration of the disability to refuse to transfer a pregnant employee who so requests.**(C)**For an employer to refuse to temporarily transfer a pregnant employee to a less strenuous or hazardous position for the duration of the pregnancy if the employee so requests, with the advice of the employee's physician, where that transfer can be reasonably accommodated. However, no employer shall be required by this section to create additional employment that the employer would not otherwise have created, nor shall the employer be required to discharge any employee, transfer any employee with more seniority, or promote any employee who is not qualified to perform the job.**(4)**For

an employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided under this section. **(b)** This section shall not be construed to affect any other provision of law relating to sex discrimination or pregnancy, or in any way to diminish the coverage of pregnancy, childbirth, or a medical condition related to pregnancy or childbirth under any other provision of this part, including subdivision (a) of Section 12940. *Gov.t Code § 12945.*

117.    As mentioned in the factual allegations above, ANSER ADVISORY failed to abide by Gov't Code section 12945.

## SIXTH CAUSE OF ACTION

### WRONGFUL TERMINATION IN VIOLATION

### [Violation of Public Policy]

### (Against ANSER ADVISORY and DOES 1-50)

118.    SCHLICKMAN repeats and re-alleges the allegations set forth above and incorporates same by reference as though fully set forth herein.

119.    At all relevant times herein, SCHLICKMAN was an individual employed by ANSER ADVISORY.

120.    ANSER ADVISORY terminated SCHLICKMAN on the basis of her actual or perceived disability, her sex/pregnancy, and/or because of her request for accommodation.

121.    ANSER ADVISORY' termination of SCHLICKMAN's employment violates public policy of the State of California. Such public policy is set forth in Article I, §8, of the California Constitution and FEHA (Government Code §12900, *et seq*.), which specifically prohibits ANSER ADVISORY from discriminating, harassing, and retaliating against SCHLICKMAN on the basis of her disability, sex/pregnancy, and/or request for accommodation in the workplace.

122.    ANSER ADVISORY violated such public policy by discriminating against, retaliating against, harassing, failing to accommodate, and terminating SCHLICKMAN's employment on the basis of her actual or perceived disability, sex/pregnancy, and/or her need for accommodation, acts which constituted a wrongful termination of SCHLICKMAN.

123.    SCHLICKMAN's actual or perceived disability and/or her request for accommodation were substantial motivating reasons for SCHLICKMAN's termination.

124.    As a direct, foreseeable, and proximate result of SCHLICKMAN's conduct, as alleged above, SCHLICKMAN has suffered lost income, employment, and career opportunities, and has suffered

and continues to suffer other economic loss, the precise amount of which will be proven at trial.

125.   As further direct and legal result of the acts and conduct of ANSER ADVISORY, as aforesaid, SCHLICKMAN has been caused to and did suffer and continues to suffer pain, anxiety, depression, embarrassment, anger, loss of enjoyment of life, fright, nervousness, grief, worry, shock, humiliation, mortification, indignity, apprehension, ordeal, inconvenience, and emotional and mental distress, the precise amount of which will be proven at trial.

126.   ANSER ADVISORY' conduct was a substantial factor in causing the aforementioned harm.

127.   The above-recited actions of ANSER ADVISORY were done with malice, fraud, and/or oppression, and in conscious, despicable and reckless disregard of SCHLICKMAN's rights under FEHA. In addition, such conduct was carried out against SCHLICKMAN in a willful manner and in conscious disregard of her rights. SCHLICKMAN is entitled to and seeks punitive damages against ANSER ADVISORY herein in an amount according to proof.   The aforementioned conduct on which punitive damages is alleged, was done with the advance knowledge by an officer, director and/or managing agent of ANSER ADVISORY. The alleged conduct on which punitive damages is alleged, was authorized, ratified and/or committed by an officer, director, and/or managing agent of ANSER ADVISORY.

## SEVENTHTH CAUSE OF ACTION

**Failure To Pay Minimum Wages, Interest Thereon, Reasonable Attorney's Fees, & Costs Of Suit**

**[Lab. Code §§ 558.1, 1194, 1197, 1197.1(a)(3)]**

## EIGHTH CAUSE OF ACTION

**Liquidated Damages In An Amount Equal To Minimum Wages Unlawfully Unpaid And Interest**

**[Lab. Code § 1194.2]**

## NINTH CAUSE OF ACTION

**Failure To Pay Sick Leave [Lab. Code § 246]**

## TENTH CAUSE OF ACTION

**Failure To Pay Overtime Wages, Interest Thereon, Reasonable Attorney's Fees, And Costs Of Suit**

**[Lab. Code §§ 510, 558.1, and 1194]**

## ELEVENTH CAUSE OF ACTION

**Missed, Interrupted, On-Call And/Or Untimely Meal Periods**

**[Lab. Code §§ 226.7(b) & (c), 512, and 558.1]**

## TWELFTH CAUSE OF ACTION

**Missed, Interrupted, On-Call And/Or Untimely Rest Breaks [Lab. Code §§ 226.7 and 558.1]**

**THIRTEENTH CAUSE OF ACTION FOR WAITING TIME PENALTIES**

**Lab. Code § 203 Waiting Time Penalties For Willful Violation Of Lab. Code § 201**

**[Lab. Code § 558.1]**

**(Against ANSER ADVISORY and DOES 1-50)**

128.    SCHLICKMAN incorporates by reference, repeats, and realleges, all preceding and subsequent paragraphs as though fully set forth herein.

129.    SCHLICKMAN is informed and believes, and thereon alleges, that ANSER ADVISORY: (1) set SCHLICKMAN's wages, hours, or working conditions; (2) hired or terminated employees similar to SCHLICKMAN; (3) controlled SCHLICKMAN's work; (4) set or negotiated SCHLICKMAN's wages; (5) assigned or supervised SCHLICKMAN's work; (6) determined SCHLICKMAN's hours or conditions of employment; (7) set SCHLICKMAN's work schedules; and/or (8) supplied the instrumentalities, tools, or place of work for SCHLICKMAN.

130.    California Labor Code § 201 requires all California employers to remit payment to an employee of all earned, but unpaid compensation, on the date of termination. California Labor Code § 203 provides that an employee is entitled to a day's wages, up to thirty (30) days for every day an employer fails to pay all of SCHLICKMAN's wages upon termination. Though ANSER ADVISORY finally communicated to SCHLICKMAN that her final day working for ANSER ADVISORY would be February 5, 2021, ANSER ADVISORY should have accommodated SCHLICKMAN and reinstated her in September 2020. Having failed to do so, ANSER should have paid SCHLICKMAN her final paycheck in September of 2020. Thus, SCHLICKMAN's final paycheck was untimely and, as a result of such, SCHLICKMAN is owed waiting time penalties as ANER ADVISORY's conduct is clearly willful given it withheld payment from September 2020 to February 2020.

131.    SCHLICKMAN has incurred and continues to incur legal expenses and attorneys' fees. SCHLICKMAN will seek the recovery of those fees and costs at the conclusion of this lawsuit and all other remedies available under applicable laws.

**FORTEENTH CAUSE OF ACTION**

**Failure To Reimburse All Necessary Business Expenses [Lab. Code §§ 558.1 and 2802]**

**FIFTEENTH CAUSE OF ACTION FOR UNFAIR TRADE PRACTICES**

**[Violation of Business & Professionals Code § 17100 *et seq*.]**

**SIXTEENTH CAUSE OF ACTION**

**UNFAIR COMPETITION**

**[Violation of Business & Professionals Code § 17200 *et seq*.]**

**(Against ANSER ADVISORY and DOES 1-50)**

132.    SCHLICKMAN incorporates by reference, repeats, and realleges, all preceding and subsequent paragraphs as though fully set forth herein.

133.    SCHLICKMAN alleges and incorporates by reference each of the foregoing paragraphs of this Demand as if fully alleged herein.

134.    California Business and Professions Code section 17200 ("UCL") defines unfair competition as an "unlawful" or "unfair" business act or practice.

135.    California Business & Professions Code Section 17203 provides that "[t]he court may make such orders or judgments ... as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of unfair competition."

136.    ANSER ADVISORY are each a "person" under UCL § 17021.

137.    ANSER ADVISORY have engaged in acts of unfair competition as defined in Bus. & Profs Code §§17200, et seq., by engaging in the acts and practices alleged herein.

138.    ANSER ADVISORY have engaged and continue to engage in business practices that are both unlawful and unfair and therefore violate the UCL. ANSER ADVISORY' conduct described above all constitute unlawful acts and practices prohibited by the Labor Code and UCL. These failures also independently constitute unfair acts and practices under the UCL. In addition to the above alleged failures and violations, the following violations of the Labor Code also constitute unlawful and unfair business practices prohibited by the UCL.

a)  ANSER ADVISORY' disability discrimination against SCHLICKMAN;

b)  ANSER ADVISORY' failure to accommodate SCHLICKMAN's disability;

c)  ANSER ADVISORY' failure to engage in the interactive process;

d)  ANSER ADVISORY' retaliation for requesting accommodation;

e)  ANSER ADVISORY' sex/pregnancy discrimination;

f)  ANSER ADVISORY' harassment of SCHLICKMAN on the basis of sex/pregnancy and disability;

g)  ANSER ADVISORY' failure to prevent discrimination, retaliation, and harassment;

h)  ANSER ADVISORY' wrongful termination of SCHLICKMAN;

i) ANSER ADVISORY' failure to provide meal and rest breaks;

j) ANSER ADVISORY' failure to pay SCHLICKMAN minimum wages;

k) ANSER ADVISORY' failure to pay SCHLICKMAN overtime compensation;

l) ANSER ADVISORY' failure to provide accurate wage statements;

m) ANSER ADVISORY' failure to maintain wage and hour records;

n) ANSER ADVISORY' failure to pay wages at the time of termination; and

o) ANSER ADVISORY' failure to pay or reimburse SCHLICKMAN's business expenses, such as the pro rata basis of her cellphone and business mileages reimbursement for the personal use of her vehicle.

139. As a direct and proximate result of these unlawful and unfair practices, SCHLICKMAN suffered injury in fact and lost income in that ANSER ADVISORY have become unjustly enriched by the savings in salaries, benefits, and other employment prerequisites that SCHLICKMAN would otherwise have earned but for the aforesaid unfair competition by ANSER ADVISORY. ANSER ADVISORY should be made to disgorge and make restitution to SCHLICKMAN and restore all ill-gotten gains attributable to ANSER ADVISORY's unfair competition.

140. Under the *Business & Professions Code* Section 17203, SCHLICKMAN is entitled to obtain restitution of these funds for ANSER ADVISORY' unfair competition as enumerated herein.

141. Pursuant to *Business & Professions Code* Section 17208, "[a]ny action to enforce any cause of action pursuant to this chapter [17200-17210] shall be commenced within four years after the cause of action accrued. …".

142. Pursuant to *Business & Professions* Code Section 17203, injunctive relief is necessary to prevent ANSER ADVISORY from continuing to engage in unfair competition as alleged herein.

143. SCHLICKMAN is informed and believes that ANSER ADVISORY, and persons acting in concert with them, have committed and will continue to commit the above unlawful acts unless restrained or enjoined by this Court. Unless the relief prayed for below is granted, a multiplicity of actions will result. SCHLICKMAN has no plain, speedy, or adequate remedy at law, in that pecuniary compensation would not afford adequate and complete relief. The above-described acts will cause great and irreparable damage to SCHLICKMAN unless ANSER ADVISORY are restrained from committing further illegal acts.

144. SCHLICKMAN is entitled to an award of attorneys' fees and costs as set forth herein and below. SCHLICKMAN requests relief as described herein and below.

## PRAYER FOR RELIEF

WHEREFORE, SCHLICKMAN prays for judgment as follows:

### ON ALL FEHA CAUSES OF ACTION

1. For reinstatement to Plaintiff's former position as Administrative Manager with Anser, accounting for any promotions, pay raises, and benefits Plaintiff would have earned had Anser never wrongfully terminated Plaintiff.

2. For compensatory damages, together with prejudgment interest, in an amount not less than $60,008 for each year SCHLICKMAN did not earn at least $60,008, the annual amount she would have earned if ANSER ADVISORY had not wrongfully terminated her;

3. For emotional distress damages in an amount not less than $60,008 for each year, or pro rata basis of such, SCHLICKMAN suffered serious emotional distress caused by Defendant(s)'s violation of California's FEHA;

4. For exemplary and punitive damages, in an amount not less than $600,080;

5. For reasonable attorney's fees, according to proof, in a minimum amount of $100,000;

6. For costs of suit incurred herein;

7. For pre and post judgment interest of 10% per year;

8. Tax neutralization; and

9. For such other and further relief as the court deems just and proper.

### DECLARATORY RELIEF

### (Against ANSER ADVISORY and DOES 1-50)

145. SCHLICKMAN hereby incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

146. Ca. Gov. Code §12920 sets forth the public policy of the State of California as follows: "It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgement on account of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age or sexual orientation. It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment for these reasons foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advancement, and

substantially and adversely affects the interests of employees, employer, and the public in general. Further, the practice of discrimination because of race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, marital status, national origin, ancestry, familial status, source of income, disability, or genetic information in housing accommodations is declared to be against public policy. It is the purpose of this part to provide effective remedies that will eliminate these discriminatory practices. This part shall be deemed an exercise of the police power of the state for the protection of the welfare, health and peace of the people of this state."

147.    Cal. Gov. Code §12920.5 embodies the intent of the California legislature and states, "[i]n order to eliminate discrimination, it is necessary to provide effective remedies that will both prevent and deter unlawful employment practices and redress the adverse effects of those practices on aggrieved persons. To that end, this part shall be deemed an exercise of the Legislature's authority pursuant to Section 1 of Article XIV of the California Constitution."

148.    Moreover, Cal. Gov. Code §12921, subdivision (a) says in pertinent part, "[t]he opportunity to seek, obtain, and hold employment without discrimination because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, or sexual orientation is hereby recognized as and declared to be a civil right."

149.    An actual controversy has arisen and now exists between SCHLICKMAN and ANSER ADVISORY concerning their respective rights and duties as it is believed that ANSER ADVISORY may allege that SCHLICKMAN's termination was based on a non-discriminatory, legitimate reason and that SCHLICKMAN's disability and SCHLICKMAN's requests for accommodations were not a substantial motivating factor for the decision to terminate SCHLICKMAN or any factor whatsoever. SCHLICKMAN contends that the reason given by ANSER ADVISORY was a pretext to mask its true reason(s) for terminating SCHLICKMAN. SCHLICKMAN is informed and believes, and on that basis alleges, that ANSER ADVISORY shall dispute SCHLICKMAN's contention and shall assert its reason was nondiscriminatory and legitimate.

150.    Pursuant to Cal. Gov. Code of Civ. Proc. §1060, SCHLICKMAN desires a judicial determination of SCHLICKMAN's rights and duties, and a declaration that her membership in protected classes and engagement in protected activity were substantial motivating factors in ANSER ADVISORY' decision to terminate SCHLICKMAN.

151.    A judicial declaration is necessary and appropriate at this time under the circumstances in

order that SCHLICKMAN, for SCHLICKMAN and on behalf of employees of the State of California and in conformity with the public policy of the State, obtain a judicial declaration of the wrongdoing of ANSER ADVISORY and to condemn such discriminatory employment policies or practices.

152.    A judicial declaration is necessary and appropriate at this time such that ANSER ADVISORY may also be aware of its obligations under the law to not engage in discriminatory practices and violate the law.

153.    Cal. Gov. Code §12965(b) provides that an aggrieved party, such as SCHLICKMAN herein, may be awarded reasonably attorney's fees and costs. Such fees and costs expended by an aggrieved party may be awarded for the purpose redressing, preventing or deterring discrimination.

On SCHLICKMAN's FEHA Claims:

10.    That ANSER ADVISORY, their successors, agents, representatives, employees and all persons who acted in concert with said ANSER ADVISORY be permanently enjoined from committing any acts of discrimination, relation or other similar acts, including the violations alleged in all of the Causes of Action herein and are prohibited by the FEHA, including the following affirmative relief:

(a)    For an injunction restraining ANSER ADVISORY from continuing from or maintaining any policy, practice, custom or usage which is retaliatory/discriminatory in nature against any employee exercising his/her rights under the FEHA;

(b)    For an injunction restraining ANSER ADVISORY along with its supervising employees, agents and all those subject to its control or acting in concert with it from causing, encouraging, condoning or permitting the practice of retaliation/discrimination and willful violations of FEHA;

(c)    For affirmative relief requiring ANSER ADVISORY to conduct training of all employees to "sensitize" them to the harmful nature of retaliating/discriminating against an employee exercising his/her rights under FEHA. The proposed plan of education and training should also include violation training and detection, and correction and prevention of such retaliatory/discriminatory practices;

(d)    For affirmative relief requiring ANSER ADVISORY to notify all employees and supervisors, through individual letters and permanent postings in prominent locations in all offices that retaliation violates the FEHA and the consequences of violation of such laws and policies;

(e)    For affirmative relief requiring ANSER ADVISORY to post a notice at those business located in the State of California in which ANSER ADVISORY have at least ten percent (10%) ownership interest, stating that ANSER ADVISORY violated the FEHA, and specifying the remedies in this injunction, and provide proof to the Court, within one-hundred (100) days of the Court's order that such posting has occurred;

(f)    For affirmative relief requiring ANSER ADVISORY to develop clear and effective policies and procedures for employees complaining of retaliation or violations of FEHA so they may have their complaints promptly and thoroughly investigated (by a neutral fact finder) and informal as well as formal processes for hearing, adjudication and appeal of the complaints; and

(g)    For affirmative relief requiring ANSER ADVISORY to develop appropriate sanctions or disciplinary measures for supervisors or other employees who are found to have committed retaliatory acts, including warnings to the offending person and notations in that person's employment record for reference in the event future complaints are directed against that person, and dismissal where other measures fail.

## ON ALL LABOR CODE CAUSES OF ACTION

1.    For compensatory and statutory damages, including but not limited to wages and penalties;

2.    For reasonable attorney's fees, according to proof, in a minimum amount of $100,000;

3.    For costs of suit incurred herein;

4.    For pre and post judgment interest of 10% per year;

5.    Tax neutralization; and

6.    For such other and further relief as the court deems just and proper.

On the Sixth Cause of Action:

7.    Pursuant to *Business & Professions* Code Section 17203, injunctive relief is necessary to prevent ANSER ADVISORY from continuing to engage in unfair competition as alleged.

Dated:  April 18, 2024

THE LEGAL ADVOCATE

By: _Michelle L. Reynolds_
Michelle L. Reynolds, Esq.

Michelle Reynolds, Esq.
Attorneys for Plaintiff CARA SCHLICKMAN

Cara Schlickman v. Anser Advisory f.k.a. DHS Consulting – First Amended Complaint Page **34** of **34**